IN THE UNITED STATE DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| WEBB ANDERSON, AS THE SURVIVING CHILD OF JESSE JAMES ANDERSON, DECEASED, AND DONNA ANDERSON, AS ADMINISTRATOR OF THE ESTATE OF JESSE JAMES ANDERSON, | * * * * * * * * | CIVIL ACTION FILE NO: |
| Plaintiffs, | * * | |
| vs. | * * | |
| THE UNITED STATES OF AMERICA, | * * | |
| Defendant. | * | |

**COMPLAINT**

Plaintiffs Webb Anderson and Donna Anderson, as Administrator of the Estate of Jesse James Anderson, through undersigned counsel, sue Defendant UNITED STATES OF AMERICA and allege as grounds therefore:

**JURISDICTIONAL ALLEGATIONS**

1.

This is an Action for damages under the Federal Tort Claims Act for the death and unnecessary suffering of Jesse James Anderson on November 18, 2016.

2.

On July 18, 2018, Plaintiffs, through counsel, sent by certified mail, return receipt requested, administrative tort/estate and wrongful death claims to the Department of Veterans Affairs, office of Chief Counsel, Nashville, TN, claiming damages for injuries and the death suffered by Jesse Anderson commencing on November 16, 2016, which ultimately resulted in his death on November 18, 2016, from negligent medical care and treatment by health care providers within the Department of Veterans Affairs, an agency of the United States of America, making the United States of America liable for any acts or omissions of said health care providers at the Atlanta VAMC, located in Decatur, Georgia.

3.

By return receipt and by letter dated September 18, 2018, the Department of Veterans Affairs, Office of Regional Counsel acknowledged receipt of Plaintiffs' aforementioned administrative claims. Ex. A, Return receipt; Sept. 18, 2018 letter from U.S. Dept. of Veterans Affairs to Berelc.

4.

On June 1, 2021, the Department of Veterans Affairs, office of General Council, Washington, D.C, by certified letter, denied Plaintiffs' administrative tort claims as filed with the agency at Nashville, TN. Ex. B, June 1, 2021 letter from

U.S. Dept. of Veterans Affairs to Berelc.

5.

Plaintiff has duly complied with all conditions precedent to bringing this Action.

6.

With Plaintiffs having complied with all conditions precedent, this District Court has jurisdiction regarding the instant lawsuit because this Action is brought pursuant to and in compliance with 28 USC § 1346(b), 2671- 2680 et seq., commonly known as the "Federal Tort Claims Act," which vests subject matter jurisdiction within the federal district courts.

7.

Jesse James Anderson died without a spouse.

8.

Plaintiff Webb Anderson is the biological son of Jesse James Anderson, deceased. Donna Anderson is the duly appointed administrator of the estate of Jesse James Anderson, deceased. Both Plaintiffs are citizens and residents of the United States and reside within White County, Georgia.

9.

Venue is proper in this federal District Court, under the authority of 28 USC

§ 1391(e), because the United States of America is the appropriate Defendant and all alleged events, acts and/or omissions establishing the instant claim for damages occurred at the named hospital, which is within this federal district.

10.

The amount claimed herein does not exceed the monetary sum for damages as set forth in Donna Anderson's submitted administrative/estate claim in the amount of $1,000,000 for personal injury and Webb Anderson's wrongful death claim of $3,000,000.00.

11.

Pursuant to 28 U.S.C. § 1391(b)(2), venue is proper within the Northern District of Georgia because a substantial part of the events giving rise to Plaintiffs' claims occurred in the Northern District of Georgia.

12.

Defendant The United States of America may be served with the Summons and Complaint pursuant to Federal Rules of Civil Procedure Rule 4(i).

**ATLANTA VAMC**

13.

That hereto, and during all times relevant to the events described herein, Ross B. Deppe, MD, was an agent and/or employee of the Atlanta VAMC and was

acting within the express, implied or apparent course and scope of his agency or employment with the Atlanta VAMC and the UNITED STATES OF AMERICA.

14.

That hereto, and during all times relevant to the events described herein, Elaine Diane Nocentelli, ADN, RN-BC, was an agent and/or employee of the Atlanta VAMC and was acting within the express, implied or apparent course and scope of her agency or employment with the Atlanta VAMC and the UNITED STATES OF AMERICA.

15.

That hereto, and during all times relevant to the events described herein, Pamela Brown, RN, was an agent and/or employee of the Atlanta VAMC and was acting within the express, implied or apparent course and scope of her agency or employment with the Atlanta VAMC and the UNITED STATES OF AMERICA.

16.

That hereto, and during all times relevant to the events described herein, Elizabeth A. Farmer, CCC-SLP, was an agent and/or employee of the Atlanta VAMC and was acting within the express, implied or apparent course and scope of her agency or employment with the Atlanta VAMC and the UNITED STATES OF AMERICA.

17.

That hereto, and during all times relevant to the events described herein, Brian Smith, OT, was an agent and/or employee of the Atlanta VAMC and was acting within the express, implied or apparent course and scope of his agency or employment with the Atlanta VAMC and the UNITED STATES OF AMERICA.

18.

That hereto, and during all times relevant to the events described herein, Sandy C. Leake, RN, was an agent and/or employee of the Atlanta VAMC and was acting within the express, implied or apparent course and scope of her agency or employment with the Atlanta VAMC and the UNITED STATES OF AMERICA.

19.

That hereto, and during all times relevant to the events described herein, Jamis Barton Scot Gouge, MD, was an agent and/or employee of the Atlanta VAMC and was acting within the express, implied or apparent course and scope of his agency or employment with the Atlanta VAMC and the UNITED STATES OF AMERICA.

20.

That hereto, and during all times relevant to the events described herein, Willie D. Beavers, DPT, was an agent and/or employee of the Atlanta VAMC and

was acting within the express, implied or apparent course and scope of his agency or employment with the Atlanta VAMC and the UNITED STATES OF AMERICA.

21.

That hereto, and during all times relevant to the events described herein, Janell McKethan, BSN, RN, was an agent and/or employee of the Atlanta VAMC and was acting within the express, implied or apparent course and scope of her agency or employment with the Atlanta VAMC and the UNITED STATES OF AMERICA.

22.

That hereto, and during all times relevant to the events described herein, Craig S. Jabaley, MD, was an agent and/or employee of the Atlanta VAMC and was acting within the express, implied or apparent course and scope of his agency or employment with the Atlanta VAMC and the UNITED STATES OF AMERICA.

23.

That hereto, and during all times relevant to the events described herein, Luke Brewster, MD, was an agent and/or employee of the Atlanta VAMC and was

acting within the express, implied or apparent course and scope of his agency or employment with the Atlanta VAMC and the UNITED STATES OF AMERICA.

24.

That hereto, and during all times relevant to the events described herein, David Porembka, was an agent and/or employee of the Atlanta VAMC and was acting within the express, implied or apparent course and scope of his agency or employment with the Atlanta VAMC and the UNITED STATES OF AMERICA.

25.

That hereto, and during all times relevant to the events described herein, Dadonna Marshall, CRNA, was an agent and/or employee of the Atlanta VAMC and was acting within the express, implied or apparent course and scope of her agency or employment with the Atlanta VAMC and the UNITED STATES OF AMERICA.

26.

That hereto, and during all times relevant to the events described herein, Emily Lagergren, was an agent and/or employee of the Atlanta VAMC and was acting within the express, implied or apparent course and scope of her agency or employment with the Atlanta VAMC and the UNITED STATES OF AMERICA.

27.

That hereto, and during all times relevant to the events described herein, Ryan Moore, was an agent and/or employee of the Atlanta VAMC and was acting within the express, implied or apparent course and scope of his agency or employment with the Atlanta VAMC and the UNITED STATES OF AMERICA.

28.

That hereto, and during all times relevant to the events described herein, An-Kwok Ian Wong, was an agent and/or employee of the Atlanta VAMC and was acting within the express, implied or apparent course and scope of his agency or employment with the Atlanta VAMC and the UNITED STATES OF AMERICA.

29.

That hereto, and during all times relevant to the events described herein, Alejandro Adolfo Aragaki-Nakahodo, MD, was an agent and/or employee of the Atlanta VAMC and was acting within the express, implied or apparent course and scope of his agency or employment with the Atlanta VAMC and the UNITED STATES OF AMERICA.

30.

That hereto, and during all times relevant to the events described herein, Kunjannamma J. Simon, RN, CCRN, CSC, was an agent and/or employee of the

Atlanta VAMC and was acting within the express, implied or apparent course and scope of his agency or employment with the Atlanta VAMC and the UNITED STATES OF AMERICA.

31.

That hereto, and during all times relevant to the events described herein, Joseph T. Hormes, was an agent and/or employee of the Atlanta VAMC and was acting within the express, implied or apparent course and scope of his agency or employment with the Atlanta VAMC and the UNITED STATES OF AMERICA.

32.

That hereto, and during all times relevant to the events described herein, Sharon Polensek, was an agent and/or employee of the Atlanta VAMC and was acting within the express, implied or apparent course and scope of her agency or employment with the Atlanta VAMC and the UNITED STATES OF AMERICA.

33.

That hereto, and during all times relevant to the events described herein, Rose Edward, was an agent and/or employee of the Atlanta VAMC and was acting within the express, implied or apparent course and scope of her agency or employment with the Atlanta VAMC and the UNITED STATES OF AMERICA.

34.

That hereto, and during all times relevant to the events described herein, any person or persons who participated in the negligent acts and omissions described herein, were agents and/or employees of the Atlanta VAMC and were acting within the express, implied or apparent course and scope of their agency or employment with the Atlanta VAMC and the UNITED STATES OF AMERICA.

**FACTUAL ALLEGATIONS**

35.

Pursuant to OCGA 9-11-9.1(a), Federal Rule of Evidence 702 and all other applicable authority, Plaintiffs attach to this Complaint as Exhibit 3 the Affidavit of John W. Schweiger, MD, and by reference and incorporation make said Affidavit and accompanying materials part of this Complaint as if they were set forth fully herein.

36.

Mr. Jesse James Anderson was admitted to Atlanta VAMC on November 4, 2016, for an elective right carotid endarterectomy, during which he suffered a Cranial Nerve IX injury. As a result, he was unable to effectively eat by mouth and required a Dobhoff tube placed for tube 4 feedings. *See* Ex. C at ¶ 7; Ex. D, selected Bates numbered medical records.

37.

In the early morning of November 16, 2016, Mr. Anderson's Dobhoff tube came out. No other acute events or issues were noted during this time. *See* Ex. C at ¶ 8; Ex. D, selected Bates numbered medical records.

38.

Other than the minor inconvenience of having to have the Dobhoff tube re-inserted and a little upper airway congestion, Mr. Anderson's post-surgical recovery from the carotid endarterectomy was progressing very well and without incident. *See* Ex. C at ¶ 9; Ex. D, selected Bates numbered medical records.

39.

Sometime during the afternoon of November 16, 2016, Mr. Anderson's Dobhoff tube was reinserted by some physician, nurse, staff person or other personnel working at and on behalf of the Atlanta VAMC. *See* Ex. C at ¶¶ 10, 14; Ex. D, selected Bates numbered medical records.

40.

At approximately 3:30 p.m., Mr. Anderson stopped breathing and went into cardiac arrest. *See* Ex. C at ¶ 10; Ex. D, selected Bates numbered medical records.

41.

The nursing notes documented the following about the incident: "Dobhoff

was placed into the pts left nare . . . . After tube placement, pt began to show signs of increased anxiety, coughing, and diaphoresis. Oxygen therapy was applied for pt comfort and for relaxation, patient was shifting and turning to the left and the right, continued to cough and self-suction himself. VSs showed increased HR, elevated systolic pressure, and low oxygen saturation. Manager and charge nurse assisted writer in the assessment of pt. MD called, pt given Ativan for his anxiety, rapid response initiated at the same time, and code called shortly thereafter due to the pts loss of consciousness." Ex. C at ¶ 11; Ex. D, selected Bates numbered medical records.

42.

The notes of a staff physician document the following about the incident: "[the physician] arrived to the bedside in response for anesthesia help. Per RT at the scene, dobhoff seen through the cords during first VL attempt. Patient not intubated at the time as the cords were closed. RT removed Dobhoff . . . ." *See* Ex. C at ¶ 13; Ex. D, selected Bates numbered medical records.

43.

Mr. Anderson was subsequently admitted to the Surgical Intensive Care Unit on 11/16/2016 "with acute hypoxemic respiratory failure, thought to be secondary to a misplaced Dobhoff tube." Mr. Anderson was placed on mechanical ventilation

since he was incapable of breathing on his own. He was unresponsive to external stimuli and "myoclonus jerks," indicating severe brain injury, were noted. *See* Ex. C at ¶ 15; Ex. D, selected Bates numbered medical records.

44.

During a group conference with the VAMC Director as part of the notification to Mr. Anderson's family of an adverse event, it was noted that "upon a routine insertion of a Dobhoff feeding tube, the tube was misguided into the Veterans trachea. The Veteran is believed to have suffered a vocal cord spasm occluding his airway." *See* Ex. C at ¶ 16; Ex. D, selected Bates numbered medical records.

45.

Based on the evidence indicating severe brain injury and subsequent poor prognosis, Mr. Anderson's family agreed to have him extubated later in the day on 11/18/2016. Mr. Anderson died shortly thereafter. *See* Ex. C at ¶ 17; Ex. D, selected Bates numbered medical records.

46.

An autopsy was performed on 11/25/2016. The cause of death was attributed to "hypoxic ischemic encephalopathy due to cardiac arrest due to probable vocal cord spasm due to probable inadvertent placement of feeding tube into larynx."

This information is reflected on Mr. Anderson's Death Certificate. *See* Ex. C at ¶ 18; Ex. D, selected Bates numbered medical records.

47.

The care providers described herein, the VAMC and the United States of America owed a duty to provide competent care to Mr. Anderson in connection with the placement of the Dobhoff tube and to provide competent care to Mr. Anderson when the tube was misplaced.

## COUNT I- PROFESSIONAL NEGLIGENCE

48.

The VAMC medical personnel, named and/or described above, breached the standard of care for professionals who undertake to place Dobhoff tubes, and who provide rescue efforts to patients where such tubes have been erronesouly placed, in at least the following ways:

    a.    By negligently placing the Dobhoff tube into Mr. Anderson's trachea;

    b.    By negligently failing to timely recognize the malpositioned feeding tube;

    c.    By negligently continuing to push the Dobhoff tube further into and through Mr. Anderson's vocal cords;

    d.      By negligently failing to immediately engage in or call for rescue attempts which include but are not limited to failing to immediately withdraw the misplaced tube and provide life-saving interventions such as a cricothyrotomy or giving life-saving medications;

    e.      By failing to recognize the misplacement of the tube and failing to direct the care provider(s) who were present with Mr. Anderson to immediately withdraw the tube and engage in rescue efforts or call for the appropriate personnel who could rescue Mr. Anderson; and

    f.      In all the ways described in the attached Affidavit of Hans Schweiger, M.D. *See* Ex. C at ¶ 23.

49.

More specifically, the person(s) who advanced the tube into Mr. Anderson's trachea should have immediately stopped advancing the subject tube and withdrawn it once Mr. Anderson began to cough and otherwise demonstrate signs that the tube was being placed in the trachea as opposed to the esophagus. Instead of stopping the insertion of the Dobhoff tube at that point, the care provider(s) continued to advance the Dobhoff tube through the vocal cords and further down Mr. Anderson's throat causing Mr. Anderson to suffer a vocal cord spasm. *See* Ex. C at ¶ 24.

50.

Once the tube was apparently misplaced, however, Pamela Brown, RN, her manager and charge nurse, evaluated Mr. Anderson who was reportedly coughing, turning from side to side and sweating. These providers' conduct fell below the standard of care since these individual care providers failed to recognize that the Dobhoff tube was in Mr. Anderson's trachea rather than his esophagus; failed to withdraw the tube and failed to recognize that his life was at immediate risk. These medical personnel should have immediately removed the tube and provided or called for immediate assistance to provide the above-described rescue attempts. *See* Ex. C at ¶ 25.

51.

Instead, these providers called Dr. Gouge who then negligently ordered Ativan and negligently failed to recognize the misplacement of the Dobhoff tube and the immediate peril that Mr. Anderson faced. *See* Ex. C at ¶ 26. Dr. Gouge should have directed the immediate withdrawal of the misplaced tube and ordered or called for immediate rescue interventions for Mr. Anderson.

52.

The person or persons who inserted the Dobhoff tube, as described above, breached the standard of care.

53.

The person or persons described above who failed to recognize the misplaced tube and immediately engage in, call for, or order the necessary rescue attempts for Mr. Anderson, as described above, breached the standard of care.

## CAUSATION

54.

The negligent acts and omissions described herein resulted in unnecessary and significant pain and suffering, both physical and mental, for Mr. Anderson.

55.

The negligent acts and omissions described herein resulted in an anoxic brain injury for Mr. Anderson.

56.

The negligent acts and omissions described herein deprived Mr. Anderson of his health and enjoyment of the remainder of his life.

57.

The negligent acts and omissions described herein resulted in the wrongful and premature death of Mr. Anderson.

## DAMAGES

As a direct and proximate result of the negligent acts and/or omissions of Defendant UNITED STATES OF AMERICA, through its employees, agents or apparent agents, servants and/or any healthcare providers at the Atlanta VAMC, acting within the course and scope of their employment and/or agency, Plaintiffs seek the following all damages allowed by law including, but not limited to damages for: (a) all components of the mental and physical pain and suffering endured by the decedent Jesse James Anderson from the time of the improper placement of the Dobhoff tube until the time of his death; and (b) all damages permitted under O.C.G.A. § 51-4-2 and all other applicable law arising from the wrongful death of Jesse James Anderson.

WHEREFORE, Plaintiff Webb Anderson demands judgment and an award of damages against Defendant UNITED STATES OF AMERICA for the wrongful death of Jesse James Anderson in an amount not to exceed $3,000,000.00, as claimed in his administrative claim, and Plaintiff Donna Anderson demands judgment and an award of damages against Defendant UNITED STATES OF AMERICA for all proper estate claims of Jesse James Anderson in an amount not to exceed $1,000,000.00, as claimed in her administrative claim. Plaintiffs also

seek allowable costs, interest and such other and further relief as the Court deems just and proper.

This 9th day of August 2021.

                                        */s/ **Matthew E. Cook**  
                                        Matthew E. Cook  
Georgia Bar No. 184399  
Kate S. Cook  
Georgia Bar No. 280584  
Robert H. Childres III  
Georgia Bar No.721558  
Nathan Nicholson  
Georgia Bar No. 390553  
Attorneys for Plaintiffs  
Cook Law Group, LLC  
P.O. Box 2415  
Gainesville, Georgia 30503  
Telephone: (678) 928-3899  
Email: matt@cook-lawgroup.com  
kate@cook-lawgroup.com  
robert@cook-lawgroup.com  
nathan@cook-lawgroup.com  

Justin Berelc  
Georgia Bar No.790638  
Attorney for Plaintiffs  
Berelc Law Office, P.C.  
P.O. Box 786  
Lavonia, GA 30553  
Telephone: (706) 536-0518  
Email:  
justin@berelclawoffice.com