IN THE UNITED STATE DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| WEBB ANDERSON, AS THE SURVIVING CHILD OF JESSE JAMES ANDERSON, DECEASED, AND DONNA ANDERSON, AS ADMINISTRATOR OF THE ESTATE OF JESSE JAMES ANDERSON, | * * * * * * * * | CIVIL ACTION FILE NO: 1:21-cv-03226-AT |
| Plaintiffs, | * * | |
| vs. | * * | |
| THE UNITED STATES OF AMERICA, | * * | |
| Defendant. | * | |

## PLAINTIFFS' REPLY TO DEFENDANT'S RESPONSE REGARDING PLAINTIFFS' MOTION FOR SANCTIONS

Throughout this litigation, Plaintiffs have given Defendants the benefit of the doubt and assumed that all objections and claims of privilege were well founded. As this briefing has shown, though, Defendants have been anything but truthful and forthcoming. The Government and its lawyers still continue to withhold a second statement of Pam Brown and Investigative Report materials, neither of which have been put on a privilege log or submitted for *in camera* review. Further, Defendant and its lawyers have now issued a secret subpoena to a critical witness and solicited multiple substantive changes to her testimony. These actions demand sanctions against Defendant and discipline for its lawyers.

1

I.  UNFOUNDED CLAIMS OF PRIVILEGE

   a. **<u>Peer Review Privileges</u>**

As the Court knows, for years, the Government's privilege and protection claims were purportedly based on 38 U.S.C. § 5705. *See, e.g.*, Doc. 104-5, Defendant's May 17, 2022 Privilege Log; Doc. 104-13, Defendant's June 15, 2023 Privilege Log; Doc. 104-16, Defendant's September 13, 2023 Privilege Log. Yet, when ordered by the Court to support any claims of privilege it was making, *see* Doc. 102, Order, at 2, Defendant and Defense counsel affirmatively chose to produce the statements instead and did NOT brief any privilege on the long-concealed provider statements. *See* Doc. 110, Defendant's Amended Brief Regarding Privileges, *passim.* Defense counsel has now admitted that the privilege it asserted for years "did not fit" within the legal basis for such a privilege. *See* Doc. 124, Defendant's Brief in Response to Plaintiffs' Motion for Sanctions (hereinafter, Defendant's Brief), at 8. Only in response to Plaintiffs' Motion for Sanctions, Defendant has now manufactured arguments on additional grounds for inapplicable claims of privilege and protection. These arguments are meritless.

This is a federal question case, involving suit against a federal agency, based on the Federal Tort Claims Act, and involving the actions and inactions of employees or agents of the federal government while working in a federally owned and operated hospital on a patient who was there because of his service to the

federal government. It should come as no surprise to Defendant that the privilege rules that apply are, similarly, governed by federal law. With respect to privilege specifically, "a claim of privilege in federal court is resolved by federal common law, unless the action is a civil proceeding and the privilege is invoked with respect to an element of a claim or defense as to which State law supplies the rule of decision." *Hancock v. Hobbs*, 967 F.2d 462, 466 (11th Cir. 1992) (quoting Fed. R. Evid. 501). In actions brought under the Federal Tort Claims Act, however, state law does not supply the specific rule of decision; rather, the Act "assimilates into federal law the rules of substantive law of the . . . states." *Feres v. United States*, 340 U.S. 135, 142 (1950). As such, because the state law is merely adopted into the federal law, the federal claims of privilege—not state law claims of privilege—apply to such cases.[1]

---

[1] *See, e.g.*, *Menses v. U.S. Postal Serv.*, 942 F. Supp. 1320, 1323–24 (D. Nev. 1996) ("Because federal courts only adopt state law under the Federal Tort Claims Act, federal law still supplies the rule of decision under Rule 501 and state privilege law does not apply to Federal Tort Claims Act cases."); *Syposs v. United States*, 179 F.R.D. 406, 411 (W.D.N.Y. 1998), *adhered to on reconsideration*, 63 F. Supp. 2d 301 (W.D.N.Y. 1999) ("Thus, as federal courts only adopt state law under the FTCA, federal law still supplies the rule of decision under Rule 501 and state privilege law does not apply to Federal Tort Claims Act cases."); *Young v. United States*, 149 F.R.D. 199, 204 (S.D. Cal. 1993) ("[The] legislative history [of Rule 501] clearly indicates that state privilege law was not intended to apply in Federal Tort Claims Act cases."); *Stevenson v. Stanley Bostitch, Inc.,* 201 F.R.D. 551, 555 (N.D. Ga. 2001) ("The federal courts, however, have consistently held that the federal law of privilege applies to all claims in a federal question case.").

Defendant's citation to *FDIC v. ACE Mortg. Funding, Inc.*, 2013 WL 12109878, *2 (N.D. Ga. April 17, 2013) is inapposite. As this Court noted, that case was one where Georgia law was the sole controlling substantive law, but the Court's consideration would be different were a case to have federal law supplying the rule of decision, including an analysis whether federal common law recognizes such an evidentiary privilege and whether there was a "superseding federal interest at stake". *Id.*, at *3. In this case, though state law is adopted into the federal law by way of the Federal Tort Claims Act, the federal law supplies the rule of decision, and the Court is not bound to the state's law on privilege.[2]

Indeed, up until Defendant filed its Response brief, *see* Doc. 124, at 8, Defendant continued to assert the federal privilege applied, and only upon "recently learn[ing]" (from whom one wonders) that its privilege assertions were baseless and had *zero* support did Defendant jump ship to the state law claim. Moreover, because there already exist extensive regulations relating to a medical review privilege for the VA (the requirements of which Defendant admittedly did not and cannot meet in this case), there is no federal interest necessary to be

---

[2] For similar authority and a collection of cases, see *Robbins v. United States*, Case No. CIV-03-1224-PCT-JAT-PHX-JAT, 2004 WL 7325705, at *1 (D. Ariz. Sept. 21, 2004) ("[T]he Court finds persuasive the consistent line of cases that have found that where federal courts merely incorporate state law into federal law, such as under the FTCA, federal law supplies the rule of decision.").

protected by adopting into federal law any additional state law privilege.[3] *See Jenkins v. DeKalb Cty., Georgia*, 242 F.R.D. 652, 655 (N.D. Ga. 2007) (noting the "pragmatic concern" that it is "impractical to apply two different rules of privilege to the same evidence.") (internal citation omitted).

   b. **<u>Privilege and Work Product</u>**

Somehow, Defendant continues to reaffirm that its claims of attorney–client privilege and work-product protection over all the statements it turned over following this Court's order to support its privilege were made in good faith. This claim not only defies the statements of the witnesses themselves, but also reality. Defendant continues to argue that "the attorney-client privilege applies to the witness statements" ***despite the absence of any attorney involvement*** in the preliminary inquiry Defendant now alleges. *See* Doc. 124, Defendant's Brief, at 3. "It is generally recognized that the communication of factual information is not protected by the attorney-client privilege. For example, reports reflecting the status

---

[3] Even in the event some state law privileges did apply, the "review" privilege Defendant asserts is most likely preempted by 38 U.S.C. § 5705 and the extensive regulations explaining the privileges and circumstances under which the specific entity in question in this case—the VA—can claim some type of review privilege. *See, e.g.*, *Foley v. Luster*, 249 F.3d 1281, 1287 (11th Cir. 2001) (noting that field preemption may occur where a federal interest is "so dominant that the federal system will be assumed to preclude enforcement of state laws on the same subject."). In this case, the federal interest in protecting the VA and promulgating specific regulations as to the requirements for the entity are compellingly strong, as it dictates what evidence may be used against it.

of litigation and containing purely factual information are not privileged." *Meade v. Gen. Motors, LLC*, 250 F. Supp. 3d 1387, 1392 (N.D. Ga. 2017). This law is clear, yet despite the Court pointing Defendant directly to this authority, Defendant and its lawyers continue arguing without any factual support that this privilege applies. Further, as Plaintiffs set out in their Motion, *see* Doc. 115, at 5, at least the Watson statement was not prepared at the direction of anyone, much less an attorney, and as the McKethan statement itself shows, it was prepared at the direction of Nurse Watson, not any attorney. *See* Doc. 115-1, at 16.

With respect to any witnesses who may have been directed to give a statement, Defendant now advances a newly minted argument that the statements were prepared in connection with VA Directive 0700 and are also covered by the work-product protection. *See* Doc 124, Defendant's Brief, at 3–6. The directive reveals, though, that this inquiry ***was conducted not in anticipation of litigation, but instead pursuant to a mandatory policy***. As this Court has recognized, "documents prepared in the ordinary course of business, pursuant to public requirements unrelated to litigation, or for other non-litigation purposes are not protected if they were not also created 'because of' or for use in litigation." *United States ex rel. Bibby v. Wells Fargo Bank, N.A.*, 165 F. Supp. 3d 1319, 1325 (N.D. Ga. 2015) (internal citation omitted). A close look at the handbook Defendant recently filed shows that any statements taken ***were not made for use in litigation***

*or pursuant to a tort claim*.[4] Further, even if the Court accepts as the VA's reason for convening an AIB is for evidence relating to claims against the VA, *Doc. 125-1, at 17*, this mere listing as one possibility does not automatically entitle such documents to work product protection when there are many other possible purposes, such as disciplinary action, for which an inquiry may have been initiated.

Finally, if there were any work product protection, such protection would be fact work product rather than opinion work product, *see id.* at 31 ("The AIB need not, and in most cases should not, draw ultimate conclusions regarding such matters as litigation risk . . . ."), and Plaintiffs would have been entitled to challenge the withholding of such documents based on substantial need, as many witnesses' memories were not perfect due to Defendant's delay in administratively answering this claim. At base, however, regardless of whether this privilege applies or would be subject to an exception, the assertions of the 38 U.S.C. § 5705 and the attorney–client privilege for years without any factual or legal foundation, and as Plaintiffs previously stated, many, if not all, of these assertions were made in bad faith and to obstruct Plaintiffs' access to relevant materials. *See* Doc. 115, Plaintiffs' Brief, at 6.

---

[4] *See* Doc. 125-1, at 12 ("This Handbook does not govern . . . tort claim investigations conducted by, or under guidance from, the Office of General Counsel); *id.*, at 17 ("Tort claims investigations conducted under the guidance of the Office of General Counsel are generally excluded from the requirements of VA Directive 0700 and this Handbook.").

c. **Pam Brown's First Statement**

Only compounding the issues above, Plaintiffs noted in their Motion for Sanctions that Defendant withheld an additional statement from Nurse Brown that Defendant promised would be on a privilege log later that same week. To date, Defendant has yet to put the statement on a privilege log, despite Plaintiffs inquiring about the statement multiple times.[5] Despite having been instructed and ordered to support privilege claims over all provider documents and testimony at issue, the Government has staunchly refused to comply with the Court's directives on the privilege issues in general and Plaintiffs' entreaties specifically on the second Brown statement to justify the claims of privilege; the government remains mute and non-compliant.[6]

With respect to the newly revealed Brown statement, it is apparent that no such privilege applies. The statement was not collected or taken by the

---

[5] During a conference call held among counsel on November 28, 2023, Defendant assured Plaintiffs again it would provide a privilege log. The next day, defense counsel admitted that despite her previous promise of the time in which she would provide the log, Defendant would produce the log later. Plaintiffs have heard such statements before, and as of the time of filing this Reply, no such supplemental log has been received.

[6] To date, Defense counsel has gone from not listing any statement on a log, to promising in September to provide the second Brown statement upon receipt, *see* Doc. 115-3, September 29, 2023 email from Defense Counsel, to promising to update the privilege log in October, *see* Doc. 115-5, to failing to list any such statements anywhere on the most recently filed privilege logs in November, *see* Doc. 119, *passim*, to still withholding the second Pam Brown statement and apparently other relevant AIB documents absent from the logs in December.

Government as part of any such high-level investigation; indeed, by Defendant's own admission, it did not have possession of the statement until recently and the 38 U.S.C. § 5705 privilege does "not fit." *See* Doc. 124, at 8. Accordingly, in addition to the sanctions Plaintiffs requested previously, Plaintiffs move the Court for an order compelling production of this additional withheld statement and for other relief as the Court deems just and necessary.

## II. UNFOUNDED EXPERT TESTIMONY

### a. Signs of Anxiety

Defendant, perhaps unsurprisingly at this point, attempts to escape its fate by accusing Plaintiffs of presenting "half the story" to the Court. Despite this ill-cloaked attempt to have the Court declare a pox upon both houses,[7] Defendant's brief actually highlights some of the very conduct that necessitates sanctions. Defendant doubles down and highlights that Nurse Jones and Nurse Inhulsen, in interpreting Nurse Brown's original note, did not note immediate signs of anxiety. Not only does this briefing highlight that Defendant did solicit such testimony, but it also shows that the witnesses were deprived of the opportunity of having Nurse Brown's other close-in-time statements when giving their testimony due to

---

[7] Plaintiffs also note that they have attempted to conceal nothing from the Court; rather, Plaintiffs have filed all provider statements in full (when they were finally disclosed by the Government) so that the Court can understand the true nature of what has occurred in this case. *See* Doc. 115-1, Provider Statements.

9

Defendant's concealment. In fact, the previously withheld February statement from Nurse Brown shows that not only were the "gagging" and signs of anxiety immediate, but they were also contemporaneous with the insertion of the tube. *See* Doc. 115-1, Provider Statements, at 5.

### b. **Administration of Ativan**

Defendant also continues to advance that its experts' testimony allowed it to argue "in the alternative in good faith" either the late timeline or the non-administration of Ativan. While a party could potentially make such an argument in good faith barring any outside evidence, such an argument completely ignores the crux of Plaintiffs' Motion on this point: Defendant withheld evidence directly refuting its experts on these points, did not provide them to the experts, and continued to solicit and advance testimony that was refuted by the withheld evidence. To withhold the truth in such close-in-time statements from everyone, including one's own experts, is the opposite of arguing in good faith.[8] The

---

[8] The Government and its lawyers continue to advance the theory that if the Ativan was given it would have no effect because of the short time between its administration and the Code. *See* Doc. 124, at 17. The deceit in that argument is apparent now that the withheld statements have been disclosed. It is clear that the Ativan was indeed given at or near 15:21, and the concealed Watson statement shows that the Code was not called until 15:44 (near when Mr. Anderson became unconscious according to the Government's Brief). *Id.*, at 19. Even by Defendant's expert's own admissions, intravenous administration of Ativan are effective within three minutes. *See* Doc. 105-3, Mitros Dep., at 152:23–25. The administration clearly affected Mr. Anderson. *See* Ex. 1, Schweiger Dep., at 122:6–14.

10

Government and its lawyers' arguments to have the Plaintiffs' case thrown out based on total falsehoods underscore the seriousness of the Government's misdeeds and justify the harshest of sanctions.

   c. **The McKethan Timeline**

The Government's Response to Plaintiff's Motion reveals even more misconduct by its counsel. Specifically, Defendant's counsel now admits that they issued a secret "subpoena" to Janell McKethan on November 13, 2023. *See* Doc. 124, at 18. The "subpoena" issued to Ms. McKethan was never provided to Plaintiffs prior to its being filed as an exhibit to Defendant's Response. What the subpoena purports to compel, though, is even more problematic. While the subpoena references the December 14, 2023 hearing before this Court, what it commanded was that Ms. McKethan appear at Defendant's counsel's office on November 20, 2023 "for questioning by the United States Attorney's Office" to "discuss" the case. *See* Doc. 125-7.[9] No provision of Fed. R. Civ. P. 45 permits a subpoena to command the witness to "discuss" a case unilaterally with one party's attorney. This abuse of the subpoena process and failure to provide Plaintiffs with

---

[9] Plaintiffs further note that the form Defendant appeared to use for the template of its subpoena was form AO 88B (Rev. 06/09), titled "Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action." *See* Doc. 125-7. When comparing this purported subpoena to the actual form document, it becomes clear that Defendant tampered with both the title and the command of the subpoena to coerce Ms. McKethan's testimony without any notice to Plaintiffs.

a copy of the subpoena (or even give them notice of the subpoena's issuance) showcases Defendants' continued misconduct in this case.[10]

As a product of this secret subpoena, Ms. McKethan provided a Declaration, purporting to make changes "clarifying her testimony" and making changes to her deposition over nine months after its completion. *See* Doc. 125-8. Such solicitations of evidence through abuse of the subpoena power is improper in and of itself, but even the declaration itself solicited is improper as a back-door attempt at changing testimony well past the 30-day cutoff for deposition changes.[11] *See* Fed. R. Civ. P. 30(e)(1). These latest acts by the Government and their counsel cannot be tolerated if the system is to work properly.

---

[10] It is axiomatic that counsel must provide a copy of a subpoena at least contemporaneously with its issuance to opposing parties. While Fed. R. Civ. P. 45(a)(4) specifies that subpoenas commanding production of documents must be provided to opposing counsel before their service, this does not exempt other subpoenas from being provided. Indeed, the Advisory Committee Notes to the 1991 amendments to the rule specify that "[s]uch *additional* notice is not needed with respect to a deposition because of the requirement of notice imposed by Rule 30 or 31." (emphasis supplied).

[11] This type of abuse of the rules has been roundly criticized and harshly punished by Courts. *See Kremsky v. Kremsky*, CV 16-4474, 2017 WL 30003, at *3 (E.D. Pa. Jan. 3, 2017) ("[W]e cannot permit lawyers to issue[] subpoenas without prior notice to obtain information under the invalid use of judicial authority."). The Northern District of Georgia similarly does not abide lawyers manipulating deposition testimony to later claim that a witness "misremembered" only after other evidence has proven the original deposition testimony false. *See, e.g.*, Ex. 2, Judge Pannell Sanctions Order (issuing sanctions for the issuance of false testimony later clarified by declaration and "molding subsequent witnesses' testimony to match").

d. **Timeline of Code and Rapid Response**

As Plaintiffs show in their Motion for Sanctions, Defendant, with possession of these statements and knowledge of the times, continued to advance 15:30 as the time the code was called. *See* Doc. 115, at 11 and sources cited therein. While Defendant continues to argue that its response time was reasonable and that it was not negligent,[12] the underlying merit of the claim is not the subject of the instant briefing; rather, the issue is *why* defense counsel advanced and solicited a timeline they knew was not supported by the evidence. None of the statements Defendant concealed supported the false timeline it advanced (with Ativan being given at 16:32 if at all). In fact, the statements directly refute such a timeline, but because the timelines in those statements were inconsistent with the theories Defendant advanced at the time, defense counsel conveniently had "no specific recollection" of Nurse Watson's timeline and possessed, but allegedly did not open, the McKethan statement, including her timeline. *See* Doc. 124, at 18.

---

[12] For the purposes of this Reply, Plaintiffs do not re-hash all of the incorrect information Defendant advances; however, by way of example only of many of the "facts" Defendant represented as undisputed, Defendant states that the providers "called a rapid response as soon as [Mr. Anderson's] oxygen levels began to decrease." *See* Doc. 20, Defendant's Response to Plaintiffs' Motion, at 20. Plaintiffs note that, particularly when coupled with Mr. Anderson's change in coloration, the vital signs and symptoms reflected in the newly disclosed statements, including an oxygen saturation of 80%, demonstrate that a rapid response was not called at the earliest sign of decline.

13

III. **CONCEALED WITNESSES**

Prior to the recent revelation of the contents of the provider statements, Plaintiffs had neither knowledge of any involvement of Nurse Patani[13] on the day of the Dobhoff insertion nor knowledge of the existence of Dr. West. Because Defendants had the statements identifying these witnesses and failed to disclose them, they are subject to sanctions pursuant to Fed. R. Civ. P. 37(c).[14] That Defense counsel now claims that she was "not aware of a Nurse Patani being involved in this case until reading [Plaintiffs'] motion," *see* Doc. 124, at 22, even if one is inclined to believe these repeated "accidents," provides no safe harbor. The Federal Rules of Civil Procedure specifically require disclosures under Rule 26(a)

---

[13] Defendant also seems to argue that Plaintiffs had sufficient knowledge of Nurse Patani because there was a "Nurse Patini" listed in the medical records days before the failed Dobhoff insertion. That Defendant argues Plaintiffs had sufficient knowledge of an individual's involvement due to a different spelling of a name, only listed on a different day, in over a thousand pages of medical records while Defendant sat idle with the name expressly listed on an incident report specifically about the Dobhoff insertion speaks volumes about its intent.

[14] In yet another attempt to dodge sanctions, Defendant, wrongly, tries to assert that Plaintiffs did not "meet and confer" with Defendant's counsel before filing the Motion for Sanctions. Defendant fundamentally misunderstands the difference between a motion to compel and a motion for sanctions for failure to disclose. First, Plaintiffs also cannot confer on or move to compel evidence they do not know exists. Up until these names were revealed in the provider statements, Plaintiffs had no knowledge of their involvement. Second, Rule 37(c) requires no such conference, and the absence of any meet-and-confer requirement under Rule 37(c) is not without reason; when a party brings a motion under Rule 37(c), that party, presumably, has already found by other means the name of a witness that was improperly concealed. At that point, nothing is left to compel; the sanction applies for the failure to disclose the witnesses when required.

to be based on the information reasonably available, and "[a] party is not excused from making its disclosure because it has not fully investigated the case." Fed. R. Civ. P. 26(a)(1)(E). When viewed together with defense counsel's claims that (1) she possessed Nurse McKethan's statement for months but did not read it, despite claiming privilege over it, (2) she had "no specific recollection" of the evidence she withheld contradicting the timeline Defendant advanced, (3) she "recently learned" that 38 U.S.C. § 5705 did not apply, despite clinging onto that privilege for years, and (4) Defense counsel's advancement to the Court of baseless testimony and doubling down after being called out, these repeated incidents of "inadvertence" can only be seen as what they truly are: wanton, willful, and malicious disregard for Plaintiffs and for the truth.

## IV. CONCLUSION

Defendant and its lawyers have made a complete mockery of the Federal Rules and the duty of candor to the Court, and they have ignored this Court's direct orders to address the evidentiary and legal basis of the privilege asserted for documents it knew were at issue, *see* Doc. 102, instead continuing to offer nonsensical and unsupportable positions to the Court. Plaintiffs ask that the Court strike the Government's Answer, consider appropriate discipline for counsel and for other relief as the Court sees fit.

This 1st day of December, 2023.

/s/ *Matthew E. Cook*
Matthew E. Cook
Georgia Bar No. 184399
Kate S. Cook
Georgia Bar No. 280584
Nathan Nicholson
Georgia Bar No. 390553
Joshua L. Bearden
Georgia Bar No. 148312
2. Attorneys for Plaintiffs
Cook Law Group, LLC
P.O. Box 2415
Gainesville, Georgia 30503
Telephone: (678) 928-3899
Email: matt@cook-lawgroup.com
kate@cook-lawgroup.com
nathan@cook-lawgroup.com
josh@cook-lawgroup.com

Justin Berelc
Georgia Bar No.790638
Attorney for Plaintiffs
Berelc Law Office, P.C.
P.O. Box 786
Lavonia, GA 30553
Telephone: (706) 536-0518
Email: justin@berelclawoffice.com

***Attorneys for Plaintiffs***

IN THE UNITED STATE DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| WEBB ANDERSON, AS THE SURVIVING CHILD OF JESSE JAMES ANDERSON, DECEASED, AND DONNA ANDERSON, AS ADMINISTRATOR OF THE ESTATE OF JESSE JAMES ANDERSON, <br><br>Plaintiffs, <br><br>vs. <br><br>THE UNITED STATES OF AMERICA, <br><br>Defendant. | * * * * * * * * * * * * * * * | CIVIL ACTION FILE NO: 1:21-cv-03226-AT |

## **CERTIFICATE OF SERVICE**

I hereby certify that on December 1, 2023, I electronically filed this Joint Dispute Statement with the Clerk of Court using the CM/ECF system which will automatically send email notification of such filing to the following attorneys of record:

Ryan Buchannan United States Attorney
Melaine A. Williams
Assistant U.S. Attorney
600 Richard B. Russell Bldg.
75 Ted Turner Drive, SW
Atlanta, GA 30303
Melaine.williams@usdoj.gov
***Attorneys for Defendant The United States of America***

Dated this, the 1st day of December, 2023.

*/s/ Matthew E. Cook*
Matthew E. Cook
Kate S. Cook
Nathan R. Nicholson
Joshua L. Bearden