IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

WEBB ANDERSON, AS THE     *
SURVIVING CHILD OF JESSE    *
JAMES ANDERSON, DECEASED,   *   CIVIL ACTION FILE NO:
AND DONNA ANDERSON, AS     *   1:21-cv-03226-AT
ADMINISTRATOR OF THE      *
ESTATE OF JESSE JAMES      *   Pretrial Conference Requested
ANDERSON,              *
                       *
    Plaintiffs,         *
                       *
vs.                 *
                       *
THE UNITED STATES OF AMERICA,  *
                       *
    Defendant.

## DRAFT AMENDED CONSOLIDATED PRETRIAL ORDER

1.

There are no motions or other matters pending for consideration by the court

except as noted:

**Plaintiffs:**  Plaintiffs' Motion for Sanctions remains pending. Dependent

upon the Court's ruling on the Motion for Sanctions, Plaintiffs may have additional

objections with regard to challenges to certain witnesses and/or testimony.  Plaintiffs

have also filed additional Proposed Findings of Fact in Support of the Motion for

Sanctions and have also addressed Defendant's Proposed Stipulation of Liability.

Plaintiffs will also file a Supplement Brief as directed by the Court regarding the Motion to Amend.

**Defendant:** Defendant's *Motion to Dismiss Amended Complaint* (Doc. 175) has been fully briefed and remains outstanding. Defendant respectfully submits this bears on the Court's subject matter jurisdiction to enter final judgment in excess of $4 million. In addition, the parties have filed or will file additional papers and briefing per the Court's June 11 Order (Doc. 202).

2.

All discovery has been completed, unless otherwise noted, and the court will not consider any further motions to compel discovery. (Refer to LR 37.1B). Provided there is no resulting delay in readiness for trial, the parties shall, however, be permitted to take the depositions of any persons for the preservation of evidence and for use at trial.

**Plaintiffs:**  Plaintiffs intend to take trial depositions of unavailable witnesses. While several new documents have been produced to Plaintiffs following the parties' September 2023 Discovery Dispute, to avoid any further delay of this case, Plaintiffs plan to simply subpoena all available witnesses to trial and cross examine them there.

**Defendant:** To the extent Plaintiffs seek trial depositions of unavailable witnesses, Defendant reserves all objections other than to the form of any questions during such depositions.

3.

Unless otherwise noted, the names of the parties as shown in the caption to this Order and the capacity in which they appear are correct and complete, and there is no question by any party as to the misjoinder or non-joinder of any parties.

**The parties are correctly named.**

4.

Unless otherwise noted, there is no question as to the jurisdiction of the court; jurisdiction is based upon the following code sections. (When there are multiple claims, list each claim and its jurisdictional basis separately.)

**Jurisdiction for all claims in this case is based on the Federal Tort Claims Act, as prescribed by 28 U.S.C. § 1346(b), 2671–2680 *et seq.***

**Defendant does not dispute the Court's personal or subject matter jurisdiction to adjudicate Plaintiffs' tort claims. However, Defendant submits there is an issue as to the Court's subject matter jurisdiction to enter final judgment in excess of $4 million. *See* No. 1, *supra*.**

3

5.

The following individually-named attorneys are hereby designated as lead counsel for the parties:

Plaintiffs:                    **Matthew E. Cook**
                               **Cook Law Group, LLC**
                               **800 Jesse Jewell Pkwy SW**
                               **Suite 100**
                               **Gainesville, Georgia 30501**
                               **678-928-3899 (p)**
                               **888-612-0589 (f)**
                               **matt@cook-lawgroup.com**


Defendant:                     **Andres H. Sandoval**
                               **Assistant U.S. Attorney**
                               **United States Attorney's Office**
                               **75 Ted Turner Drive, SW**
                               **Suite 600**
                               **Atlanta, Georgia 30303**
                               **Tel: (404) 581-6096**
                               **Email: andres.sandoval@usdoj.gov**


Other Parties: (specify)   **None.**

6.

Normally, the plaintiff is entitled to open and close arguments to the jury. (Refer to LR39.3(B)(2)(b)). State below the reasons, if any, why the plaintiff should not be permitted to open arguments to the jury.

**None; however, pursuant to the Federal Tort Claims Act, the arguments will be made to the Court.**

7.

The captioned case shall be tried (_____) to a jury or (__**X**__) **to the court without a jury**, or (_____) the right to trial by jury is disputed.

8.

State whether the parties request that the trial to a jury be bifurcated, i.e. that the same jury consider separately issues such as liability and damages. State briefly the reasons why trial should or should not be bifurcated.

**<u>Plaintiffs</u>:   There is no reason to bifurcate trial.**

**<u>Defendant</u>: Defendant agrees there is no reason to bifurcate the trial.**

9.

Attached hereto as Attachment "A" and made a part of this order by reference are the questions which the parties request that the court propound to the jurors concerning their legal qualifications to serve.

5

**Not Applicable; this case will be tried by the Court, and jurors will not be required.**

10.

Attached hereto as Attachment "B-1" are the general questions which plaintiff wishes to be propounded to the jurors on voir dire examination.

Attached hereto as Attachment "B-2" are the general questions which defendant wishes to be propounded to the jurors on voir dire examination.

Attached hereto as Attachment "B-3", "B-4", etc. are the general questions which the remaining parties, if any, wish to be propounded to the jurors on voir dire examination.

The court, shall question the prospective jurors as to their address and occupation and as to the occupation of a spouse, if any. Counsel may be permitted to ask follow-up questions on these matters. It shall not, therefore, be necessary for counsel to submit questions regarding these matters. The determination of whether the judge or counsel will propound general voir dire questions is a matter of courtroom policy which shall be established by each judge.

**Not Applicable; this case will be tried by the Court, and jurors will not be required.**

11.

State any objections to plaintiff's voir dire questions:

State any objections to defendant's voir dire questions:

State any objections to the voir dire questions of the other parties, if any:

**Not Applicable; this case will be tried by the Court, and jurors will not be required.**

12.

All civil cases to be tried wholly or in part by jury shall be tried before a jury consisting of not less than six (6) members, unless the parties stipulate otherwise. The parties must state in the space provided below the basis for any requests for additional strikes. Unless otherwise directed herein, each side as a group will be allowed the number of peremptory challenges as provided by 28 U.S.C. § 1870. See Fed.R.Civ.P. 47(b).

**Not Applicable; this case will be tried by the Court, and jurors will not be required.**

13.

State whether there is any pending related litigation. Describe briefly, including style and civil action number.

**None.**

7

14.

Attached hereto as Attachment "C" is plaintiff's outline of the case which includes a succinct factual summary of plaintiff's cause of action and which shall be neither argumentative nor recite evidence. All relevant rules, regulations, statutes, ordinances, and illustrative case law creating a specific legal duty relied upon by plaintiff shall be listed under a separate heading. In negligence cases, each and every act of negligence relied upon shall be separately listed. For each item of damage claimed, plaintiff shall separately provide the following information: (a) a brief description of the item claimed, for example, pain and suffering; (b) the dollar amount claimed; and (c) a citation to the law, rule, regulation, or any decision authorizing a recovery for that particular item of damage. Items of damage not identified in this manner shall not be recoverable.

15.

Attached hereto as Attachment "D" is the defendant's outline of the case which includes a succinct factual summary of all general, special, and affirmative defenses relied upon and which shall be neither argumentative nor recite evidence. All relevant rules, regulations, statutes, ordinances, and illustrative case law relied upon as creating a defense shall be listed under a separate heading. For any counterclaim, the defendant shall separately provide the following information for each item of damage

claimed: (a) a brief description of the item claimed; (b) the dollar amount claimed; and (c) a citation to the law, rule, regulation, or any decision authorizing a recovery for that particular item of damage. Items of damage not identified in this manner shall not be recoverable.

16.

Attached hereto as Attachment "E" are the facts stipulated by the parties. No further evidence will be required as to the facts contained in the stipulation and the stipulation may be read into evidence at the beginning of the trial or at such other time as is appropriate in the trial of the case. It is the duty of counsel to cooperate fully with each other to identify all undisputed facts. A refusal to do so may result in the imposition of sanctions upon the non-cooperating counsel.

17.

The legal issues to be tried are as follows:

**Plaintiffs**: **Dependent upon the Court's ruling on Plaintiffs' Motion for Sanctions, the legal issues at trial may include the following:**

1. **Medical Malpractice in the State of Georgia via the Federal Torts Claims Act to include damages, including, through 28 U.S.C. § 1346(b), O.C.G.A. §§ 51-1-27;**

9

2.     Plaintiffs' damages to include pain and suffering, funeral and other related bills, the full value of Defendant's life under Georgia law, and general damages (O.C.G.A. §§ 9-3-70, 51-1-1, 51-1-6, 51-1-9, 51-1-13, 51-1-27, 51-2-1, 51-2-2, 51-4-2, 51-4-5, 51-12-1, 51-12-2, 51-12-3, 51-12-4, 51-12-6, 51-12-7);

3.     Expenses of Litigation (including costs, expenses, and attorneys' fees).

**Defendant**: The remaining issue to be tried by the Court is damages. Defendant has submitted proposed stipulations of fact that amount to an admission of liability (*i.e.*, conceding the issues of duty, breach, and causation). *See* ECF No. 202. However, Plaintiffs must still establish by a preponderance of evidence the damages to which they are entitled. In terms of "expenses of litigation," Defendant notes that these matters are delineated by statute. *See* 28 U.S.C. § 2678 (concerning attorney's fees); 28 U.S.C. § 2412 (concerning costs). Defendant's remaining sovereign immunity from fees costs has not been waived and is hereby preserved. *Cf. Munro v. United States* 303 U.S. 36, 41 (1938); *United States v. United States Fid. & Guar. Co.*, 309 U.S. 506, 514 (1940).

10

18.

Attached hereto as Attachment "F-1" for the plaintiff, Attachment "F-2" for the defendant, and Attachment "F-3", etc. for all other parties is a list of all the witnesses and their addresses for each party. The list must designate the witnesses whom the party will have present at trial and those witnesses whom the party may have present at trial. Expert (any witness who might express an opinion under Rule 702), impeachment and rebuttal witnesses whose use as a witness can be reasonably anticipated must be included. Each party shall also attach to the list a reasonable specific summary of the expected testimony of each expert witness.

All of the other parties may rely upon a representation by a designated party that a witness will be present unless notice to the contrary is given ten (10) days prior to trial to allow the other party(s) to subpoena the witness or to obtain the witness' testimony by other means.  Witnesses who are not included on the witness list (including expert, impeachment and rebuttal witnesses whose use should have been reasonably anticipated) will not be permitted to testify, unless expressly authorized by court order based upon a showing that the failure to comply was justified.

19.

Attached hereto as Attachment "G-1" for the plaintiff, "G-2" for the defendant, and "G3", etc. for all other parties are the typed lists of all documentary and physical

11

evidence that will be tendered at trial. Learned treatises which are expected to be used at trial shall not be admitted as exhibits. Counsel are required, however, to identify all such treatises under a separate heading on the party's exhibit list.

Each party's exhibits shall be numbered serially, beginning with 1, and without the inclusion of any alphabetical or numerical subparts. Adequate space must be left on the left margin of each party's exhibit list for court stamping purposes. A courtesy copy of each party's list must be submitted for use by the judge.

Prior to trial, counsel shall mark the exhibits as numbered on the attached lists by affixing numbered yellow stickers to plaintiff's exhibits, numbered blue stickers to defendant's exhibits, and numbered white stickers to joint exhibits. When there are multiple plaintiffs or defendants, the surname of the particular plaintiff or defendant shall be shown above the number on the stickers for that party's exhibits.

Specific objections to another party's exhibits must be typed on a separate page and must be attached to the exhibit list of the party against whom the objections are raised. Objections as to authenticity, privilege, competency, and, to the extent possible, relevancy of the exhibits shall be included. Any listed document to which an objection is not raised shall be deemed to have been stipulated as to authenticity by the parties and shall be admitted at trial without further proof of authenticity.

Unless otherwise noted, copies rather than originals of documentary evidence may be used at trial. Documentary or physical exhibits may not be submitted by counsel after filing of the pretrial order, except upon consent of all the parties or permission of the court. Exhibits so admitted must be numbered, inspected by counsel, and marked with stickers prior to trial.

Counsel shall familiarize themselves with all exhibits (and the numbering thereof) prior to trial. Counsel will not be afforded time during trial to examine exhibits that are or should have been listed.

20.

The following designated portions of the testimony of the persons listed below may be introduced by deposition:

**Plaintiffs:**

**Pamela Brown**

    **1.)**    **Page 5, Lines 12 through Page 5, Line 14**

    **2.)**    **Page 5, Line 16 through Page 6, Line 7**

    **3.)**    **Page 6, Line 16 through Page 7, Line 25**

    **4.)**    **Page 8, Line 15 through Page 9, Line 21**

    **5.)**    **Page 10, Line 6 through Page 11, Line 9**

**6.)**     **Page 11, Line 15 through Page 14, Line 1**

**7.)**     **Page 14, Line 6 through Page 20, Line 17**

**8.)**     **Page 20, Line 23 through Page 21, Line 4**

**9.)**     **Page 22, Line 11 through Page 23, Line 1**

**10.)**    **Page 26, Line 13 through Page 27, Line 12**

**11.)**    **Page 27, Line 20 through Page 29, Line 2**

**12.)**    **Page 29, Line 10 through Page 29, Line 25**

**13.)**    **Page 30, Line 16 through Page 30, Line 21**

**14.)**    **Page 31, Line 1 through Page 32, Line 3**

**15.)**    **Page 32, Line 8 through Page 32, Line 12**

**16.)**    **Page 33, Line 3 through Page 34, Line 6**

**17.)**    **Page 34, Line 14 through Page 35, Line 7**

**18.)**    **Page 35, Line 22 through Page 40, Line 2**

**19.)**    **Page 44, Line 19 through Page 47, Line 18**

**20.)**    **Page 48, Line 19 through Page 49, Line 6**

**21.)**    **Page 50, Line 5 through Page 55, Line 16**

**22.)**    **Page 55, Line 20 through Page 59, Line 1**

**23.)**    **Page 62, Line 15 through Page 62, Line 23**

**24.)**    **Page 62, Line 25 through Page 65, Line 2**

**25.)**    **Page 65, Line 9 through Page 67, Line 2**

**26.)**    **Page 67, Line 9 through Page 67, Line 12**

**27.)**    **Page 68, Line 5 through Page 68, Line 11**

**28.)**    **Page 69, Line 9 through Page 70, Line 3**

**29.)**    **Page 70, Line 16 through Page 71, Line 24**

**30.)**    **Page 72, Line 19 through Page 74, Line 1**

**31.)**    **Page 76, Line 4 through Page 78, Line 13**

**32.)**    **Page 78, Line 16 through Page 78, Line 22**

**33.)**    **Page 79, Line 10 through Page 81, Line 10**

**34.)**    **Page 81, Line 13 through Page 81, Line 18**

**35.)**    **Page 81, Line 21 through Page 82, Line 7**

**36.)**    **Page 82, Line 15 through Page 90, Line 9**

**37.)**    **Page 90, Line 25 through Page 92, Line 11**

**38.)**    **Page 92, Line 25 through Page 94, Line 6**

**39.)**    **Page 97, Line 15 through Page 98, Line 16**

**40.)**    **Page 98, Line 19 through Page 100, Line 5**

**41.)**    **Page 100, Line 8 through Page 101, Line 7**

**42.)**    **Page 101, Line 14 through Page 101, Line 16**

**43.)**    **Page 101, Line 21 through Page 101, Line 25**

**44.)**   Page 102, Line 2 through Page 102, Line 24

**45.)**   Page 103, Line 2 through Page 103, Line 13

**46.)**   Page 106, Line 12 through Page 107, Line 20

**47.)**   Page 109, Line 1 through Page 109, Line 4

**48.)**   Page 109, Line 8 through Page 109, Line 12

**49.)**   Page 109, Line 15 through Page 110, Line 3

**50.)**   Page 110, Line 8 through Page 110, Line 11

**51.)**   Page 110, Line 16 through Page 111, Line 6

**Janell McKethan**

**1.)**   Page 6, Line 3 through Page 6, Line 10

**2.)**   Page 7, Line 5 through Page 7, Line 12

**3.)**   Page 7, Line 16 through Page 10, Line 16

**4.)**   Page 12, Line 11 through Page 13, Line 24

**5.)**   Page 17, Line 17 through Page 19, Line 19

**6.)**   Page 21, Line 2 through Page 23, Line 16

**7.)**   Page 24, Line 2 through Page 27, Line 5

**8.)**   Page 27, Line 9 through Page 31, Line 11

**9.)**   Page 31, Line 20 through Page 34, Line 1

**10.)**   Page 34, Line 16 through Page 39, Line 21

**11.)   Page 40, Line 2 through Page 41, Line 6**

**12.)   Page 41, Line 11 through Page 43, Line 23**

**13.)   Page 46, Line 18 through Page 48, Line 3**

**14.)   Page 48, Line 22 through Page 50, Line 15**

**15.)   Page 50, Line 23 through Page 59, Line 19**

**16.)   Page 60, Line 12 through Page 60, Line 20**

**17.)   Page 60, Line 25 through Page 67, Line 17**

**18.)   Page 68, Line 8 through Page 68, Line 11**

**19.)   Page 68, Line 18 through Page 70, Line 4**

Plaintiffs also reserve the right to use any other deposition transcript for any witness who is or becomes unavailable and counter-designates all portions designated by Defendant.  Plaintiffs reserve the right to counter-designate any other such portions of depositions that are designated for use by Defendant and to object to the testimony submitted by Defendant through the beginning of trial. Pursuant to the conference with the Court held on June 12, 2024, Plaintiffs may also request a deposition for preservation of evidence and use at trial of any of these witnesses who are unavailable.

17

**Defendant:** Subject to any objections, which Defendant shall present in writing no later than the day the case is first scheduled for trial, Defendant designates the following deposition portions:

1. **All designations made by Plaintiffs, subject to any counter-designation or objection.**

2. **Deposition of Pamela M. Brown**
   a. Page 6, Lines 5-7
   b. Page 37, Lines 16-23
   c. Page 48, Line 2 through Page 49, Line 15
   d. Page 79, Lines 3-9
   e. Page 100, Line 6 through Page 102, Line 24
   f. Page 109, Line 8-19

3. **Deposition of Janell McKethan**
   a. Subject to any counter-designation or objection, Defendant designates all portions of Ms. McKethan's transcript designated by Plaintiffs.

**Defendant reserves the right to use any other deposition transcript for any witness who is or becomes unavailable. Defendant reserves the right to counter-designate any portion of depositions that are designated for use by Plaintiffs.**

Any objections to the depositions of the foregoing persons or to any questions or answers in the depositions shall be filed in writing no later than the day the case is first scheduled for trial. Objections not perfected in this manner will be deemed waived or abandoned. All depositions shall be reviewed by counsel and all extraneous and unnecessary matter, including non-essential colloquy of counsel, shall be deleted.

18

Depositions, whether preserved by stenographic means or videotape, shall not go out with the jury.

21.

Attached hereto as Attachments "H-1" for the plaintiff, "H-2" for the defendant, and "H-3", etc. for other parties, are any trial briefs which counsel may wish to file containing citations to legal authority concerning evidentiary questions and any other legal issues which counsel anticipate will arise during the trial of the case. Limitations, if any, the format and length of trial briefs is a matter of individual practice which shall be established by each judge.

22.

In the event this is a case designated for trial to the court with a jury, requests for charge must be submitted no later than 9:30 a.m. on the date on which the case is calendared (or specially set) for trial. Requests which are not timely filed and which are not otherwise in compliance with LR 51.1, will not be considered. In addition, each party should attach to the requests to charge a short (not more than one (1) page) statement of that party's contentions, covering both claims and defenses, which the court may use in its charge to the jury.

Counsel are directed to refer to the latest edition of the Eleventh Circuit District Judges Association's Pattern Jury Instructions and Devitt and Blackmar's Federal

Jury Practice and Instructions in preparing the requests to charge. For those issues not covered by the Pattern Instructions or Devitt and Blackmar, counsel are directed to extract the applicable legal principle (with minimum verbiage) from each cited authority.

23.

If counsel desire for the case to be submitted to the jury in a manner other than upon a general verdict, the form of submission agreed to by all counsel shall be shown in Attachment "I" to this Pretrial Order. If counsel cannot agree on a special form of submission, parties will propose their separate forms for the consideration of the court.

24.

Unless otherwise authorized by the court, arguments in all jury cases shall be limited to one-half hour for each side. Should any party desire any additional time for argument, the request should be noted (and explained) herein.

**Not Applicable.  This case will be tried to the Court.**

25.

If the case is designated for trial to the court without a jury, counsel are directed to submit proposed finding of fact and conclusions of law not later than the opening of trial.

20

26.

Pursuant to LR 16.3, lead counsel and persons possessing settlement authority to bind the parties met in person on August 8, 2022 at mediation to discuss in good faith the possibility of settlement of this case. The court (_____) has or (__**X**__) **has not discussed** settlement of this case with counsel. It appears at this time that there is:

(_____) A good possibility of settlement.

(_____) Some possibility of settlement.

(_____) Little possibility of settlement.

(__**X**__) **No possibility of settlement. The parties conferred on Thursday, August 24, 2023, but they were unable to make any progress toward settlement. Following the September 2023 discovery dispute, in April 2024, the parties exchanged written offers by email, but resolution by settlement does not appear possible at this time.**

27.

Unless otherwise noted, the court will not consider this case for a special setting, and it will be scheduled by the clerk in accordance with the normal practice of the court.

**The Court has specially set this case for trial to begin August 7, 2024 with a video pretrial conference on July 11, 2024 at 3:00 p.m. pursuant to Doc. 202.**

28.

The plaintiffs estimate it will require 2-3 days to present their evidence.

The defendant estimates it will require 2 days to present its evidence.

It is estimated that the total trial time is no more than 5 days.

29.

IT IS HEREBY ORDERED that the above constitutes the pretrial order for the above captioned case (_____) submitted by stipulation of the parties or (_____) approved by the court after conference with the parties.

IT IS FURTHER ORDERED that the foregoing, including the attachments thereto, constitutes the pretrial order in the above case and that it supersedes the pleadings which are hereby amended to conform hereto and that this pretrial order shall not be amended except by Order of the court to prevent manifest injustice. Any attempt to reserve a right to amend or add to any part of the pretrial order after the pretrial order has been filed shall be invalid and of no effect and shall not be binding upon any party or the court, unless specifically authorized in writing by the court.

22

IT IS SO ORDERED, this _____ day of _____, 2024.

_____
HON. AMY TOTENBERG
SENIOR UNITED STATES DISTRICT
JUDGE

Each of the undersigned counsel for the parties hereby consents to entry of the foregoing pretrial order, which has been prepared in accordance with the form pretrial order adopted by this court.

Respectfully submitted,

s/ *Matthew E. Cook*
Matthew E. Cook
Georgia Bar No. 184399
Nathan R. Nicholson
Georgia Bar No. 390553
Joshua L. Bearden
Georgia Bar No. 148312
COOK LAW GROUP, LLC
P.O.  Box 2415
800 Jesse Jewell Pkwy SW, Suite 100
Gainesville, Georgia 30503 (30501)
Telephone: (678) 928-3899
Facsimile: (888) 612-0589
matt@cook-lawgroup.com
nathan@cook-lawgroup.com
josh@cook-lawgroup.com

Justin Berelc
Georgia Bar No.790638
Attorney for Plaintiffs

23

Berelc Law Office, P.C.
P.O. Box 786
Lavonia, GA 30553
Telephone: (706) 536-0518
Email: justin@berelclawoffice.com
*Attorneys for Plaintiffs*

RYAN K. BUCHANAN
*United States Attorney*

*/s/ Andres H. Sandoval*
ANDRES H. SANDOVAL
*Assistant United States Attorney*
Georgia Bar No. 643257
Andres.sandoval@usdoj.gov
SHARON A. LIM
*Assistant United States Attorney*
Georgia Bar No. 144414
Sharon.lim@usdoj.gov
United States Attorney's Office
Richard B. Russell Federal Building
75 Ted Turner Drive SW, Suite 600
Atlanta, GA  30303-3309
Tel. (404) 581-6000
Fax (404) 581-6181

*Counsel for Defendant*

## Attachment "C"

Attached hereto as Attachment "C" is plaintiff's outline of the case which includes a succinct factual summary of plaintiffs' cause of action and which shall be neither argumentative nor recite evidence.

This is a medical malpractice, personal injury and wrongful death case against the Veteran's Administration brought pursuant to the Federal Tort Claims Act (28 U.S.C. § 2671 *et seq.*).  This case stems from the Defendant's misplacement of a Dobhoff feeding tube into decedent Jesse Anderson's trachea followed by Defendant's failure to timely provide remedial or resuscitative efforts which led to his extensive, terrifying suffering and his untimely death on November 18, 2016. The Defendant is the employer and/or principal for the providers responsible for Mr. Anderson's care on the date of his death, on the date of the Dobhoff misplacement, and at all other relevant times.

On November 4, 2016, Mr. Jesse James Anderson, a U.S. Veteran, was admitted to the Atlanta Veterans Affairs Medical Center in Atlanta, Georgia for an elective right carotid endarterectomy (a procedure to remove blockages from his carotid artery). During the procedure, he suffered a Cranial Nerve IX injury, resulting in him being unable to effectively eat by mouth and requiring a Dobhoff feeding tube

for temporary feedings until a PEG tube could be placed. After his Dobhoff tube had come out, Nurse Pamela Brown was ordered by Dr. Jamis Gouge to place the Dobhoff tube at around 10 a.m. on November 16, 2016.

Nurse Brown had never placed a Dobhoff feeding tube and had not received any training on placing Dobhoff tubes. Accordingly, she expressed concern to Dr. Gouge and others about placing the Dobhoff tube, noting that she believed it was not within her scope of her practice. After several hours had passed and after discourse with Dr. Jamis Gouge, Nurse Brown proceeded to place the Dobhoff Tube into Mr. Anderson's left nostril and into his trachea.

The primary risk in placing a Dobhoff feeding tube is the inadvertent misplacement of the tube into a patient's trachea as opposed to the patient's esophagus. During and following the placement of such feeding tubes, a care provider must be alert for signs and symptoms of misplacement of the tube such as coughing, sweating, and changes in vital signs and the ability to speak or breathe. If a tube is inadvertently passed into the trachea, the tube should be immediately withdrawn, and the patient should be observed for signs of respiratory distress which must be resolved immediately.

Because the Dobhoff tube was inserted into Mr. Anderson's trachea, he experienced a vocal cord spasm with caused him to be unable to breathe.

Accordingly, during and shortly after the insertion of the Dobhoff tube in this case, Mr. Anderson began to display clear, unequivocal signs of respiratory distress, including coughing, turning from side to side, sweating, a drop in his oxygen saturation rate and a change in his vital signs. Despite these signs, neither Pamela Brown nor any of the nurses in the room with Mr. Anderson removed the Dobhoff tube nor timely recognized the cause of Mr. Anderson's respiratory distress.  Instead, the nurses believed that Mr. Anderson simply had some anxiety and called Dr. Gouge. One of the nurses then reported to Dr. Gouge their observations of Mr. Anderson. However, Dr. Gouge failed to appreciate Mr. Anderson's immediate peril and instead ordered Ativan (a respiratory depressant) for Mr. Anderson at approximately 1521, which was given to Mr. Anderson via IV injection.

Mr. Anderson continued to struggle for air and his condition deteriorated further.  He became cyanotic (blue), lost consciousness and eventually lost his pulse. Eventually, the Rapid Response team was called to assess Mr. Anderson's condition. Nurse Sibymon, a member of the Rapid Response team, arrived to Mr. Anderson's room at 1537 and noted that he was cyanotic and unconscious.  Nurse Sibymon then called a Code which appears to have happened at or about 1544.

During the Rapid Response Team/Code Team's efforts to revive Mr. Anderson, Ryan Moore, a respiratory therapist, attempted to establish an airway for Mr.

Anderson so that he could have proper ventilation.  When Mr. Moore examined Mr. Anderson's airway, he visualized the Dobhoff tube through Mr. Anderson's vocal cords.  Mr. Moore then removed the Dobhoff tube around 1545.  Mr. Anderson was eventually intubated at 1555.  Mr. Anderson eventually regained a pulse but due to the prolonged lack of oxygen he suffered a profound brain injury.

These many errors, including the failure to recognize the misplacement of the Dobhoff tube, the failure to immediately withdraw the tube, the failure to timely call for a Rapid Response or Code, the administration of a respiratory depressant, and the delay in respiratory resuscitation all combined to cause Mr. Anderson to suffer a profound, irreversible hypoxic brain injury. Following the diagnosis of this severe brain injury and grim prognosis, Mr. Anderson's family agreed to discontinue life support efforts on 11/16/2016 after consultation with his care providers, and Mr. Anderson died shortly thereafter, although Defendants were unable to find a doctor to pronounce Mr. Andersons' death until several hours after it occurred.

Plaintiffs now seek damages for the full value of Mr. Anderson's life, for the pain and suffering Mr. Anderson endured prior to his death, and for attorney's fees and expenses.

## Relevant Rules, Regulations, Statutes, Ordinances, and Illustrative Case Law Creating a Specific Legal Duty Relied Upon by Plaintiff

> In Georgia, a person professing to practice surgery or the administering of medicine for compensation must bring to the exercise of his profession a reasonable degree of care and skill. Any injury resulting from a want of such care and skill shall be a tort for which a recovery may be had. A claim under this medical malpractice statute essentially has three elements. A plaintiff must show (1) the duty inherent in the doctor-patient relationship; (2) the breach of that duty by failing to exercise the requisite degree of skill and care; and (3) that this failure was the proximate cause of the injury sustained.

*Myrick v. Fulton Cty.*, 69 F.4th 1277, 1305–06 (11th Cir. 2023) (internal citations omitted).

28 U.S.C. § 1346 (United States as a Defendant)

28 U.S.C. § 2674 (Liability of the United States)

28 U.S.C. § 2671 *et seq.* (Federal Tort Claims Act)

28 U.S.C. § 2412 (a)–(c) (Costs and Fees)

O.C.G.A. § 9-2-41 (Tort Actions Not Abated)

O.C.G.A. § 9-3-70 (Medical Malpractice Defined)

O.C.G.A. § 51-1-1 (Definition of Tort)

O.C.G.A. § 51-1-6 (Breach of legal duty)

O.C.G.A. § 51-1-9 (Recovery for torts)

O.C.G.A. § 51-1-13 (Physical Injury – Right of Action)

O.C.G.A. § 51-1-27 (Malpractice of Medicine)

O.C.G.A. § 51-2-1 (Imputable Negligence)

O.C.G.A. § 51-2-2 (Liability for Torts of Employee)

O.C.G.A. § 51-4-2 (Recovery for Homicide of Parent)

O.C.G.A. § 51-4-5 (Recovery by Administrator)

O.C.G.A. § 51-12-1 (Kinds of damages)

O.C.G.A. § 51-12-2 (General damages and special damages defined)

O.C.G.A. § 51-12-3 (Direct and consequential damages)

O.C.G.A. § 51-12-4 (Compensation for injury)

O.C.G.A. § 51-12-6 (Damages for injury to peace, happiness or feelings)

O.C.G.A. § 51-12-7 (Necessary expenses)

Defendant has now stipulated to duty, breach of duty, and causation of damages in this case.  Defendant has not stipulated to negligence with regard to training of its nurses, the negligence of Dr. Jamis Gouge nor the length of time Mr. Anderson suffered as noted in Plaintiff's Response to the Proposed Stipulation of Liability.  For the most part, however, the issues to be tried by the Court relates to the appropriate amount of damages.

Because the Court has already issued a ruling on Plaintiffs' Motion to Amend, Plaintiffs do not recite all legal authority relating thereto; however, to the extent Defendants cite authority relating to Plaintiffs' Amended Complaint or other "illustrative" case law regarding the amount of damages claimed, Plaintiffs refer to

and incorporate the authority cited in their Motion to Amend, Doc. 116, Reply in Support of Motion to Amend, Doc. 132, and Response to Motion to Dismiss, Doc. 188, together with the arguments and evidence presented to the Court in connection with the Court's granting of Plaintiffs' Motion to Amend at the December 14, 2023 hearing. Plaintiffs will also provide supplemental briefing pursuant to the Court's Order, *see* Doc. 202, by June 27, 2024 relating to the Court's questions.

<u>*Acts of Negligence Relied Upon by Plaintiff*</u>

Defendant United States is liable for the negligent acts, omissions, and deviations from the standards of care from those acting on its behalf. Specifically, Pamela Brown was negligent and deviated from the standard of care by negligently placing the Dobhoff tube into Mr. Anderson's trachea, by negligently failing to timely recognize the malpositioned feeding tube and the signs thereof, by negligently failing to immediately withdraw the Dobhoff tube upon signs of respiratory distress, and by negligently failing to immediately engage in and call for rescue attempts which included but were not limited to immediately withdrawing the misplaced tube and providing life-saving interventions.

Similarly, all the providers in the room with Pamela Brown observing Mr. Anderson coughing, turning from side to side, and sweating were negligent and deviated from the standard of care since they failed to recognize the misplaced

Dobhoff tube, failed to withdraw the tube, and failed to recognize that Mr. Anderson's life was at risk or to call for immediate aid. Jamis Gouge, M.D. was also negligent and fell below the standard of care because he failed to order that the Dobhoff tube be immediately withdrawn, failed to recognize the fact and cause of Mr. Anderson's airway compromise, failed to order immediate rescue attempts, and improperly ordered Ativan, which further depressed Mr. Andersons's ability to breathe.

The providers, including Dr. Gouge, were also negligent in the insistence that an untrained provider insert the Dobhoff tube into Mr. Anderson given Pam Brown's expressed concern to Dr. Gouge and given Mr. Anderson's difficult airway.

There was also undue delay in the administration of life-saving efforts for Mr. Anderson. The failures of the code and rapid response teams to timely respond, to timely administer epinephrine, and to immediately establish a positive airway (as opposed to waiting several minutes into the Code—if the Government's witnesses are to be believed) was further negligent and conduct falling below the standard of care.

The Defendant is also liable for its failure to properly train Nurse Brown in the use of Dobhoff tubes and how to respond to signs of a misplaced Dobhoff tube. The Defendant United States of America is also liable for the actions and inactions of

each of these healthcare providers working under it under the doctrine of *respondeat superior*. "Every person shall be liable for the torts committed by his … servant by his command … within the scope of his business, whether the same are committed by negligence or voluntarily. Two elements must be present to render a master liable [under *respondeat superior*]: first, the servant must be in furtherance of the master's business; and, second, he must be acting within the scope of his master's business." *Piedmont Hospital, Inc. v. Palladino*, 580 S.E.2d 215, 217 (2003); *see also* O.C.G.A. § 51-2-1 et sq. (Imputation of Negligence, *Respondeat Superior*, vicarious liability, agency).

Georgia tort law and medical malpractice law principles including those codified in O.C.G.A. § 51-1-27 and discussed in case law apply to this action. These legal standards establish that Defendant, and each of Defendant's agents, assigns, employees, and/or contractors had a duty to exercise their administration of their medical professions with a reasonable degree of care and skill, and their failure to do so entitles Plaintiffs to recover for the personal injuries, pain and suffering, associated expenses, and full value of the life of Mr. Anderson.

### Items of Damages Claimed by Plaintiff

Plaintiff is seeking recovery for the injuries and damages Mr. Anderson suffered as a result of the misplaced Dobhoff tube, the failure to timely remove it or call for help, and the subsequent brain injury that led to his death as well as the full value of Mr. Anderson's life under Georgia law.

Plaintiff further alleges that as a result of the negligence and deviations from the standard of care, Plaintiff Donna Anderson, as Executrix of the Estate of Jesse James Anderson, is allowed to recover for Mr. Anderson's mental and physical pain and suffering and general damages resulting from her injuries in an amount determined by the finder of fact.  O.C.G.A. § 51-12-4; O.C.G.A. § 51-12-2(a).

"Pain and suffering is a legal item of damages.  The measure is the enlightened conscience of fair and impartial jurors," or in this case, for the conscience of the Court as the finder of fact. *See Georgia Suggested Pattern Jury Instructions, Volume 1*: at Section 66.501 *citing Redd v. Peters*, 100 Ga. App. 316 (1959); *Western, etc. Railroad Co. v. Young*, 83 Ga. 512, 515 (1889).

General damages are those that the law presumes flow from any tortious act and they may be recovered without proof of any amount.  *See* O.C.G.A. § 51-12-2(a). A plaintiff in a tort action generally is entitled to recover for his pain and suffering, which includes compensation for (1) interference with normal living; (2) interference with enjoyment of life; (3) loss of capacity to labor and earn money; (4) impairment

of bodily health and vigor; (5) fear of extent of injury; (6) shock of impact; (7) actual pain and suffering; (8) mental anguish; and the (9) the extent to which he must limit his activities. *Food Lion v. Williams*, 219 Ga. App. 352 (1995). Here, Donna Anderson, as Administratrix of the Estate of Jesse James Anderson, has the right to recover for Mr. Anderson's pain and suffering that he endured as he would have in life. *See* O.C.G.A. § 9-2-41. As set forth in Plaintiffs' Amended Complaint and based on the previously concealed witness accounts, Mr. Anderson was terrified and experienced significant and prolonged mental and physical pain and suffering as a result of the negligence of Defendants. Accordingly, Plaintiff Donna Anderson seeks such damages in the amount of $19,000,000.00.

Plaintiff Webb Anderson similarly seeks to recover the full value of the life of Jesse James Anderson. O.C.G.A. § 51-4-2. This value is measured as the value of the life of Mr. Anderson through the eyes of the deceased, including both economic and non-economic, intangible aspects of his life, from Mr. Anderson's own perspective. *See Head v. Thrash*, 1:21-CV-2057-SEG, 2023 WL 3664442, at *12 (N.D. Ga. Mar. 31, 2023). Georgia courts routinely look to the decedent's character, familial relationships, interests and abilities in determining the value of his life. *Curtis v. United States*, 274 F. Supp. 3d 1366, 1381 (N.D. Ga. 2017). For the full value of the life of Mr. Jesse James Anderson, while Plaintiff Webb Anderson believes no

monetary value can be placed on his father's life and that his father's life is worth far more than $6,000,000.00, Plaintiff incorporates his demand from his Amended Complaint and requests that the Court also award wrongful death damages in the amount of $6,000,000.00, for a total of $25,000,000.00 to Plaintiffs. The amounts claimed are reasonable and in keeping the prevailing valuations placed on human life in Georgia.

## Attachment "D"

## Attachment "D" – Defendant's Outline of the Case
### (*Including Factual Summary of General, Special, and Affirmative Defenses*)

This case arises out of the post-operative care of Mr. Jesse James Anderson.

On November 4, 2016, Mr. Anderson, a 70-year-old United States Army Veteran, was admitted to the Atlanta VA Medical Center for an elective right carotid endarterectomy. During Mr. Anderson's surgery, he suffered a Cranial Nerve IX injury, which compromised his ability to swallow, and which required him to utilize a feeding tube.[1] In the days following his surgery, Mr. Anderson obtained his nutrition through a Dobhoff tube, which is a slender, flexible tube utilized with patients who need nutrition but are unable to eat normally.

During the early morning hours of November 16, 2016, Mr. Anderson's Dobhoff tube came out. Dr. Jamis Gouge instructed Nurse Pamela Brown to re-insert a Dobhoff tube. During the reinsertion, the Dobhoff tube was misguided into Mr. Anderson's trachea and through his vocal cords. After the tube placement, Mr. Anderson began to show signs of increased anxiety, coughing, and diaphoresis.

---

[1] The Complaint (ECF No. 1) does not assert the United States was negligent with respect to Mr. Anderson's elective right carotid endarterectomy. *See* ECF No. 1, Complaint, ¶ 48.

Additionally, he began showing an increased heart rate, elevated systolic pressure, and low oxygen saturation.

Dr. Gouge placed an order for Ativan at 3:21 p.m. for Mr. Anderson's anxiety. Ativan is a respiratory depressant, to be given intravenously. Mr. Anderson was administered Ativan. A rapid response time was initiated at the same time, and then a code (the "Code") was called shortly thereafter because Mr. Anderson stopped breathing, lost consciousness, and went into cardiac arrest. Nurse Janell McKethan prepared a "VA Medical Center (Atlanta) CPR FLOW SHEET" ("Code Sheet") to record the Code. Though the Code Sheet states that the Code began at 3:30 p.m., Mr. Anderson's providers later stated the Code began at 3:44 p.m.

Mr. Anderson was eventually resuscitated by the Code team. However, due to oxygen deprivation, he suffered an anoxic brain injury. Life support was withdrawn, and Mr. Anderson died, two days later.

On July 18, 2018, Donna Anderson, as the Executrix of the Estate of Jesse James Anderson, filed an administrative claim on behalf of the Estate for damage, injury, or death (Form SF-95) with the VA. The administrative claim demanded $1,000,000 for personal injury damages on behalf of the decedent. On the same date, Kermit Webb Anderson, as an heir of Jesse James Anderson, filed an administrative claim for $3,000,000 for wrongful death damages. The VA denied

38

the claims on June 1, 2021. On August 9, 2021, Plaintiffs filed this action under the Federal Tort Claims Act, 28 U.S.C. § 2671, *et seq.*

## I.   **Defendant does not dispute liability, only damages.**

Defendant does not dispute that it was negligent in this case and its negligence caused Mr. Anderson's pain and suffering, as well as his death. Defendant has submitted proposed stipulations of fact that amount to an admission of liability (*i.e.*, conceding the issues of duty, breach, and causation). *See* ECF No. 200. But Defendant disputes the proper amount of damages. And its first defense is simply that Plaintiffs will fail to meet their burden to show they are entitled to the full sum of damages they seek.

The substantive law imposes on a plaintiff four elements to meet their burden of proof: (1) a legal duty to conform to a standard of conduct, (2) a breach of that duty, (3) a legally recognized causal connection between the conduct and the resulting injury, and (4) loss or damage resulting from the alleged breach of duty. *Gallant v. United States*, 709 F.2d 706, 708-09 (11th Cir. 1983).

As to damages, Defendant intends to introduce documentary evidence, lay testimony, and expert testimony of Dr. Kim A. Klancke on Mr. Anderson's many co-morbidities and life expectancy absent any negligence. Defendant intends to demonstrate that Plaintiffs are not entitled to the damages they seek because Mr.

Anderson's life expectancy is not as long as Plaintiffs' expert Dr. Hans Schweiger would testify. Moreover, Mr. Anderson's many co-morbidities decreased the quality of and time of his remaining life.

II.   **The Court lacks jurisdiction to enter judgment above $4 million.**

Next, Defendant will assert sovereign immunity inasmuch as the Court seeks to enter judgment in excess of $4 million. Defendant's motion to dismiss (Doc. 175) has been fully briefed and remains outstanding.

Relevant statutory and case law for each defense is excerpted below.

**Relevant Rules, Regulations, Statutes, Ordinances, And Illustrative Case Law**

**FEDERAL LAW**

**28 U.S.C. ' 2675 et seq. (Federal Tort Claims Act);**

**28 U.S.C. ' 1346 (b)(1); and**

**GEORGIA LAW**

**O.C.G.A. ' 51-11-7 (defenses to Tort Actions);**

**O.C.G.A. ' 51-12-2 (general damages and special damages defined);**

**O.C.G.A. ' 51-1-2 (ordinary diligence and ordinary negligence defined);**

**O.G.C.A. ' 51-1-27 (medical malpractice elements);**

**O.C.G.A. ' 51-12-11 (mitigation of damages);**

**O.C.G.A. ' 51-1-6 (damages);**

40

**O.C.G.A. § 9-11-9-1 (expert affidavits)**

**O.C.G.A. § 9-3-70 (malpractice defined)**

## Illustrative Caselaw

*Allison v. McGhan Med. Corp.*, **184 F.3d 1300, 1320 (11th Cir. 1999).** Any expert testimony proffered by the plaintiff must meet the legal as well as the substantive issues of the case.

*Turner ex rel. Turner v. United States*, **514 F.3d 1194, 1200 (11th Cir. 2008).** The Federal Tort Claims Act is a specific, congressional exception to the United States' sovereign immunity for tort claims.

*Means v. United States*, **176 F.3d 1376, 1378 (11th Cir. 1999).** The terms of the FTCA should be construed strictly in favor of the sovereign.

*OSI, Inc. v. United States*, **285 F.3d 947, 951 (11th Cir. 2002).** The burden to show a waiver of sovereign immunity falls on the plaintiff.

*Low v. United States*, **795 F.2d 466, 471 (5th Cir. 1986).** If the exact nature and duration of each recognized disability must be known before § 2675(b) is given effect, the section will be rendered meaningless.

*Lebron v. United States*, **279 F.3d 321, 330-31 (5th Cir. 2002).** Requiring the plaintiff to guard against a worst-case scenario in preparing his claim gives the Government full notice of its maximum potential liability in the case. This encourages settlement of FTCA cases in accordance with the statute's purposes.

*Salzwedel v. United States*, **No. CV-16-00501-TUC-RM, 2018 WL 460892, at \*6 (D. Ariz. Jan. 18, 2018) (quoting** *Kielwien v. United States*, **540 F.2d 676, 680 (4th Cir. 1976)).** Information does not qualify as "newly discovered evidence" or "intervening facts" if it is merely cumulative and confirmatory of what the claimant had been told prior to filing her administrative claim.

***Sims v. United States*, No. 20 CV 03993, 2023 WL 2746001, at \*9 (N.D. Ill. Mar. 31, 2023).** Evidence related to liability, even if technically newly discovered, is not the kind that warrants an increase in potential damages under § 2675.

***McMichael v. United States*, 856 F.2d 1026, 1035 (8th Cir. 1988).** Plaintiffs permitted to double their damages awards after presenting expert evidence establishing that inflation had caused the value of the U.S. dollar to decline about 50% and such a decline was unforeseeable

## Attachment "E"

Attached hereto as Attachment "E" are the facts stipulated by the parties.

1.    This civil action arises out of medical treatment of Mr. Jesse James Anderson following his November 4, 2016, admission to the Atlanta VA Medical Center (VAMC) for an elective right carotid endarterectomy.

2.    At all times relevant to the events giving rise to this Action, Ryan Moore, Deborah Jenkins, Emily Lagergren, Sunja Watson, Janell McKethan, Robin Thomas, Ian An-Kwok Wong, Maybil Sibymon, Heather Bloom, Luke Brewster, Craig Jabley, Richard Belcher, Jamis Gouge, Dennis Lester, Fagan Fraser, Mia Blake, and Pamela Brown were agents/employees of the Atlanta VAMC and were acting within the express, implied, or apparent scope of their agency or employment with the Atlanta VAMC and the United States of America.

3.    On November 4, 2016, Mr. Jesse James Anderson, a 70-year-old United States Army Veteran, was admitted to the Atlanta VAMC for an elective right carotid endarterectomy.

4.    During Mr. Anderson's surgery, he suffered a cranial nerve IX injury due to the surgery performed by Luke Brewster on November 4, 2016, which

compromised his ability to swallow and required him to utilize a feeding tube.

5.  In the days following his surgery, Mr. Anderson was obtaining his nutrition via a Dobhoff tube.

6.  A Dobhoff tube is a slender, flexible tube utilized with patients who need nutrition but are unable to eat normally.

7.  During the early morning hours of November 16, 2016, Mr. Anderson's Dobhoff tube came out.

8.  At approximately 8:00 a.m. on November 16, 2016, Nurse Pamela Brown advised Dr. Jamis Gouge, a medical resident who was on the vascular team rotation and providing care to Mr. Anderson, that Mr. Anderson's Dobhoff tube had come out.

9.  Nurse Brown asked Dr. Gouge what he wanted to do with regard to the Dobhoff tube.

10.  Dr. Gouge responded that Nurse Brown should re-insert the Dobhoff tube into Mr. Anderson.

11.  Nurse Brown advised Dr. Gouge that placing Dobhoff tubes with a mercury tip was out of her scope of practice and that Dr. Gouge would have to find someone from his team to insert the Dobhoff tube.

12.   Nurse Brown had not inserted a Dobhoff tube before and had not been trained to insert Dobhoff tubes.

13.   Nurse Brown had previously observed other nurses insert Dobhoff tubes.

14.   For the next several hours, Dr. Gouge argued with the nursing staff, insisting that placing such tubes was within a nurse's scope of practice and that nursing personnel should place the tube as opposed to the vascular team.

15.   Nurse Brown eventually agreed to reinsert a Dobhoff tube into Mr. Anderson.

16.   When Nurse Brown inserted the Dobhoff tube into Mr. Anderson, it was misguided into Mr. Anderson's trachea and through his vocal cords.

17.   The malpositioning or misplacement of a Dobhoff tube is a known complication.

18.   During the insertion of the Dobhoff tube, Mr. Anderson experienced coughing and gagging.

19.   Following the insertion of the Dobhoff tube, Mr. Anderson's vital signs showed increased heart rate, elevated systolic pressure, and low oxygen saturation.

20.   The medical providers did not attempt to withdraw the Dobhoff tube from

Mr. Anderson while he was conscious.

21. At 15:21, Dr. Gouge placed an order for Lorazepam (Ativan).

22. Nurse Brown administered Lorazepam (Ativan) to Mr. Anderson.

23. Mr. Anderson lost consciousness at some point after being given Ativan.

24. At some point, the Rapid Response team and the Code team were called.

25. Mr. Anderson was eventually, partially resuscitated by the Code team.

26. Mr. Anderson's oxygen deprivation caused him to suffer an anoxic brain injury that left him comatose and with a profound neurological injury with no reasonable probability of recovery.

27. Because of Mr. Anderson's hypoxic ischemic encephalopathy and the absence of a reasonable probability of recovery, life support was withdrawn.

28. Mr. Anderson died on November 18, 2016, at the Atlanta VAMC.

29. On November 30, 2016, the VA conducted a Management Review regarding the events leading to the death of Mr. Anderson.

30. On December 2, 2016, Kelley Wood MSN, RN-BC prepared a written Management Review, detailing her findings regarding the events leading to the death of Mr. Anderson.

31. The Management Review concluded that the standard of care was not met.

-4-

32.   The Director of the Atlanta VAMC convened an Administrative Investigation Board (AIB) to investigate the events leading to the death of Mr. Anderson.

33.   The AIB was chartered on December 23, 2016, and was completed on February 9, 2017.

34.   The AIB interviewed multiple witnesses involved in this matter, took sworn testimony from them, and had the actions of the providers involved in Mr. Anderson's care on November 16, 2016, reviewed by other VA professionals, some of whom were outside of the Atlanta VAMC.

35.   On February 9, 2017, the AIB issued its final report.

36.   Kermit Webb Anderson is the surviving child of Jesse James Anderson.

37.   Donna Anderson is the administratrix of the Estate of Jesse James Anderson.

38.   The medical records of Jesse James Anderson BATES 000001–003921 are true and accurate copies of Mr. Anderson's medical records and are authenticated without further proof.

39.   The United States' medical providers at all times were acting within the scope of their employment at the Atlanta Veterans Administration Medical Center.

40. The United States owed Mr. Jesse James Anderson a duty of care in his post-surgical treatment on November 16, 2016.

41. The United States breached that duty of care by malpositioning the Dobhoff tube, on November 16, 2016, in Mr. Anderson's trachea.

42. The United States breached that duty of care by failing to timely recognize the malpositioned feeding tube.

43. The United States breached that duty of care by failing to immediately engage in or call for rescue attempts, including by immediately withdrawing the malpositioned Dobhoff tube, providing life-saving interventions such as a cricothyrotomy, or giving life-saving medications.

44. The United States breached that duty of care by ordering and administering to Mr. Anderson Ativan, an anxiety medication that is also a respiratory depressant.

45. The United States breached that duty of care by failing to recognize the malpositioned feeding tube and failing to direct the care providers who were present with Mr. Anderson to immediately withdraw the tube and engage in rescue efforts or call for the appropriate personnel who could rescue Mr. Anderson.

46. The United States' breach of the duty of care resulted in Mr. Anderson's

pain and suffering, both physical and mental.

47. The United States' breach of the duty of care resulted in Mr. Anderson's anoxic brain injury.

48. The United States' breach of the duty of care resulted in the wrongful death of Mr. Anderson.

### Attachment "F-1"

Attached hereto as Attachment "F-1" for the plaintiff, is a list of all the witnesses and their addresses for each party.  The list must designate the witnesses whom the party will have present at trial and those witnesses whom the party may have present at trial.

The Plaintiff will have present at trial the following persons:

Webb Anderson
c/o Cook Law Group, LLC
800 Jesse Jewell Pkwy SW
Suite 100
Gainesville, GA 30501
(678) 928–3899

Donna Anderson
c/o Cook Law Group, LLC
800 Jesse Jewell Pkwy SW
Suite 100
Gainesville, GA 30501
(678) 928–3899

The Plaintiff may have present at trial the following persons:

*(N.B.: Persons listed with an asterisk are either current or former agents, employees, or contractors for Defendant for whom Defendant has greater access to such contact information. For addresses and numbers listed for the same witnesses by the government, Plaintiffs incorporate such information herein.).*

Tommy Abercrombie
100 Abercrombie Road
Dahlonega, GA 30533

Austin Ty Anderson
c/o Cook Law Group, LLC
800 Jesse Jewell Pkwy SW
Suite 100
Gainesville, GA 30501
(678) 928–3899

Matthew Ryan Anderson
c/o Cook Law Group, LLC
800 Jesse Jewell Pkwy SW
Suite 100
Gainesville, GA 30501
(678) 928–3899

Richard Belcher*
40 Lilac Lane
Covington, GA 30016

Pamela Brown*
1209 West Hefner Road
Apartment 367
Oklahoma City, OK 73114

Luke Brewster

Sandra Dukes (West)*

Jamis Gouge*
312 Carrick Way
Macon, GA 31210

Craig Jabley*

Deborah Jenkins*

Erica Ladler

Emily Lagergren

Sandy Leake

Denene Lewis*

Jenelle McKethan*
225 West Terrace Street
Edgefield, SC 29824

Ryan Moore*
6323 Cathedral Lane
Lithonia, GA

Linda Parker*

Nurse Patani (subject to spelling/name)*

Melvin Tyrone Person*

Sonja Reid*

Maybil Sibymon*
3016 Preservation Court
Lilburn, GA 30047

Ashley Slappy*

Robin Thomas*
1559 Wood Iris Way
Lawrenceville, GA 30045

Alan Trench
98 Mulberry Drive
Sautee Nacoochee, GA 30571
(706) 878-2428

Sunja Watson*
3561 Ground Way, SW
Lilburn, GA

Fred Weaver
3940 Harmony Church Road
Gainesville, GA 30507
(770) 519-1176

Ian An-Kwok Wong*

Kelley Wood*

Rachel Inhulsen, RN, BSN, CCRN
c/o Cook Law Group, LLC
800 Jesse Jewell Pkwy SW
Suite 100
Gainesville, GA 30501
(678) 928–3899

Consistent with her expert report and deposition, Nurse Inhulsen is expected to testify that the VA hospital failed to provide adequate training to Pamela Brown regarding the proper care for insertion of a Dobhoff tube and on the complications of inadvertent Dobhoff tube misplacement. Nurse Inhulsen is further expected to testify that Nurses Brown, Jenkins, Thomas, and Watkins breached the standard of care by failing to timely recognize the misplaced Dobhoff tube, assess Mr. Anderson's symptoms of respiratory distress, timely remove the Dobhoff tube, and timely call the Code or Rapid Response team upon failure of the respiratory distress to promptly resolve.

Hans Schweiger, MD, FCCP
c/o Cook Law Group, LLC
800 Jesse Jewell Pkwy SW
Suite 100
Gainesville, GA 30501
(678) 928–3899

Dr. Schweiger is expected to testify consistent with his reports, disclosures and depositions as to the standards of care for airway management during the placement of a Dobhoff tube and emergency response situations as well as the life expectancy of Mr. Anderson but for the event giving rise to this Action. Dr. Schweiger is further expected to testify as to Mr. Anderson's suffering, injury and its subsequent causation of his death and to testify consistent with the other opinions expressed in his reports and depositions.

A representative of the Atlanta VMAC hospital relating to the following topics:

> Rapid Response Team standards and response times;
> Code Team response times;
> Investigation of this incident;
> Discipline of involved providers; and
> Policies and protocols regarding Rapid Response Teams and Code Teams

Any person necessary for impeachment

Any person necessary to authenticate any documents or evidence

Any person identified or listed by Defendant

Any person necessary for purposes of rebuttal

A representative of Casemetrix or any other person necessary to authenticate verdicts and settlements in Georgia in wrongful death claims
Counsel of Record may also present testimony relating to the fees and expenses relating to this Action.

<u>Attachment "F-2"</u>

**ATTACHMENT F-2 – WITNESSES FOR THE DEFENSE**

**I.    The Defendant will call/have present at trial:**

**Kim A. Klancke, MD** - Andres H. Sandoval, AUSA, United States Attorneys Office, Suite 600, Atlanta, GA 30303, 404-581-6096.

    Consistent with his export disclosures and deposition testimony, Dr. Klancke is expected to testify in part that, to a reasonable degree of medical certainty, Mr. Anderson had reached his life expectancy at the time of his passing. While he may have lived a bit longer had he not experienced cardiac arrest, his life was nevertheless measured in months, not years. Further, Dr. Klancke is expected to testify that the cause of Mr. Anderson's cardiac arrest was a triad of problems, including persistent post operative hypoxia, pharyngeal paralysis, and a vocal cord spasm that persisted after removal of the Dobhoff tube. This is a summary of his expected testimony and is not intended to cover every opinion this expert may render (consistent with his expert disclosures and testimony).

**I.    The Defendant may call/have present at trial:**

**Kermit Webb Anderson, son of Mr. Jessie James Anderson, Plaintiff -** c/o Matt Cook, Plaintiffs' attorney, Cook Law Group, LLC, 800 Jesse Jewell Pkwy SW, Suite 100, Gainesville, GA 30501 678-928-3899.

**Donna Anderson, daughter-in-law of Mr. Jessie James Anderson, Plaintiff -** c/o Matt Cook, Plaintiffs' attorney, Cook Law Group, LLC, 800 Jesse Jewell Pkwy SW, Suite 100, Gainesville, GA 30501 678-928-3899.

**Dr. John Hans Schweiger -** c/o Matt Cook, Plaintiffs' attorney, Cook Law Group, LLC, 800 Jesse Jewell Pkwy SW, Suite 100, Gainesville, GA 30501 678-928-3899.

**Sunja Watson, RN -** c/o Andres H. Sandoval, AUSA, United States Attorney=s Office, Suite 600, Atlanta, GA 30303, 404-581-6096.

**Ryan Moore RT -** c/o Andres H. Sandoval, AUSA, United States Attorney=s Office, Suite 600, Atlanta, GA 30303, 404-581-6096.

**Maybil Sybimon, RN -** c/o Andres H. Sandoval, AUSA, United States Attorney=s Office, Suite 600, Atlanta, GA 30303, 404-581-6096.

**Melvin Person, RT (Retired)** – c/o Andres H. Sandoval, AUSA, United States Attorney=s Office, Suite 600, Atlanta, GA 30303, 404-581-6096.

**Pamela Brown, RN –** 1209 West Hefner Road, Apt. 367, Oklahoma City, Oklahoma 73114.

**Janell McKethan, RN -** c/o Attorney Michael Hannan, 191 Peachtree Street, NE, Suite 2900, Atlanta, GA 30303, 404-954-5000.

**Nurse Deborah Jenkins, RN –** Retired from the VA. Address information unknown at this time. Telephone: 770-262-1673.

Any person identified or listed by Plaintiffs.

Any person necessary for impeachment.

Any person necessary to authenticate any documents or evidence.

Any person necessary for purposes of rebuttal.

## **Attachment "G-1"**

Attached hereto as Attachment "G-1" for the plaintiff are the typed lists of all documentary and physical evidence that will be tendered at trial.

| Description | Exhibit | Tendered | Admitted |
|---|---|---|---|
| 2018-01-31 – Anderson, Jesse – ATL VA - 000068 | 1 | | |
| 2018-01-31 – Anderson, Jesse – ATL VA – 000381–83 | 2 | | |
| 2018-01-31 – Anderson, Jesse – ATL VA – 000386–88 | 3 | | |
| 2018-01-31 – Anderson, Jesse – ATL VA – 000862–63 | 4 | | |
| 2018-01-31 – Anderson, Jesse – ATL VA – 000905–06 | 5 | | |
| 2018-01-31 – Anderson, Jesse – ATL VA – 000916–17 | 6 | | |
| 2018-01-31 – Anderson, Jesse – ATL VA - 000943 | 7 | | |
| 2018-01-31 – Anderson, Jesse – ATL VA – 000989–90 | 8 | | |
| 2018-01-31 – Anderson, Jesse – ATL VA – 001049–51 | 9 | | |
| 2018-01-31 – Anderson, Jesse – ATL VA – 001069–71 | 10 | | |
| 2018-01-31 – Anderson, Jesse – ATL VA – 001082–83 | 11 | | |
| 2018-01-31 – Anderson, Jesse – ATL VA – 001391–92 | 12 | | |
| 2018-01-31 – Anderson, Jesse – ATL VA – 001474–75 | 13 | | |
| 2018-01-31 – Anderson, Jesse – ATL VA – 001522 | 14 | | |

| | | | |
|---|---|---|---|
| 2018-01-31 – Anderson, Jesse – ATL VA – 001872–73 | 15 | | |
| 2018-01-31 – Anderson, Jesse – ATL VA – 001966–71 | 16 | | |
| 2018-01-31 – Anderson, Jesse – ATL VA – 002013 | 17 | | |
| 2018-01-31 – Anderson, Jesse – ATL VA – 002164 | 18 | | |
| 2018-01-31 – Anderson, Jesse – ATL VA – 002954–55 | 19 | | |
| 2018-04-02 – Anderson, Jesse – ATL VA – 003887–3919 | 20 | | |
| 2018-04-06 – Anderson, Jesse – ATL VA – 003920–21 | 21 | | |
| 2022-02-25 – Anderson, Jesse – DFDT'S DOC PROD – 000001–000029 | 22 | | |
| 2022-02-25 – Anderson, Jesse – DFDT'S DOC PROD – 000030–002520 | 23 | | |
| Medical Records and Medical Bills of Jesse James Anderson from Atlanta VA | 24 | | |
| Photograph Series of Decedent Jesse James Anderson | 25 | | |
| Schweiger Initial Report [Doc 57-2] | 26 | | |
| Inhulsen Report [Doc 57-3] | 27 | | |
| Klancke Report [Doc 62] | 28 | | |
| Jones Report [Doc 71] | 29 | | |
| Mitros Report [Doc 72] | 30 | | |
| Schweiger Supplemental Report [Doc 73] | 31 | | |
| Schweiger Rebuttal Report [Doc 84] | 32 | | |
| Jones Rebuttal Report [Doc 91] | 33 | | |
| Birth Certificate for Decedent Jesse James Anderson | 34 | | |

| | | | |
|---|---|---|---|
| Last Will and Testament of Jesse James Anderson | 35 | | |
| Funeral and Cremation Bill | 36 | | |
| Notice of Klancke Deposition (Dep. Ex. 19) | 37 | | |
| Klancke Handwritten Notes (Dep. Ex. 20) | 38 | | |
| Klancke Charge Sheets (Dep. Ex. 21) | 39 | | |
| Klancke Deposition List (Dep. Ex. 22) | 40 | | |
| Klancke Records (Dep. Ex. 23) | 41 | | |
| Klancke Record Marked (Dep. Ex. 24) | 42 | | |
| Rassias Paper (Klancke Dep. Ex. 25) | 43 | | |
| Fudim Paper (Klancke Dep. Ex. 26) | 44 | | |
| Wang Paper (Klancke Dep. Ex. 27) | 45 | | |
| Weintraub Paper (Klancke Dep. Ex. 28) | 46 | | |
| Klancke Records Reviewed (Dep. Ex. 29) | 47 | | |
| Klancke Records Reviewed (Dep. Ex. 30) | 48 | | |
| Timeline (Klancke Dep. Ex. 31) | 49 | | |
| Medicine Record (Klancke Dep. Ex. 32) | 50 | | |
| Klancke Records Reviewed (Dep. Ex. 33–38) | 51 | | |
| Autopsy Report | 52 | | |
| Death Certificate | 53 | | |
| United States Life Tables | 54 | | |
| Social Security Life Expectancy Tables | 55 | | |
| Medical Literature Necessary for Rebuttal | 56 | | |

| | | | |
|---|---|---|---|
| Veterans Affairs Medical Center (Atlanta) Protocols for Enteral Tube Feeding (2022-02-25 – Anderson, Jesse – Dfdt's Doc Prod – 000001–29) | 57 | | |
| Jesse Anderson Miliary Records (Anderson, Jesse – Pltfs – 000007–22) | 58 | | |
| Provider Personnel Files (2022-07-01 – Anderson, Jesse – Dfdt's Doc Prod – 002521–35) | 59 | | |
| Provider Redacted Personnel Files (2022-07-29 – Anderson, Jesse – Dfdt's Doc Prod – 002536–42) | 60 | | |
| Defendant's Policies Regarding Rapid Response Team Standards and Response Times | 61 | | |
| Defendant's Policies Regarding Code Team Standards and Response Times | 62 | | |
| Defendant's Investigative Documents Regarding the Subject Incident | 63 | | |
| Defendant's Documentation Regarding Discipline of the Providers Involved in the Subject Incident | 64 | | |
| Defendants' Data Regarding Code Team and Rapid Response Team Response Times | 65 | | |
| Deposition of Sunja Watson | 66 | | |
| Deposition of Pamela Brown | 67 | | |
| Deposition of Robin Thomas | 68 | | |
| Deposition of Luke Brewster | 69 | | |
| Deposition of Richard Belcher | 70 | | |
| Deposition of Ryan Moore | 71 | | |
| Deposition of Jamis Gouge | 72 | | |
| Deposition of Maybil Sibyon | 73 | | |

| | | | |
|---|---|---|---|
| Deposition of Webb Anderson | 74 | | |
| Deposition of Emily Lagergren | 75 | | |
| Deposition of Jenelle McKethan | 76 | | |
| Deposition of Donna Anderson | 77 | | |
| Deposition of Rachel Inhulsen | 78 | | |
| Deposition of Hans Schweiger | 79 | | |
| Deposition of Kim Klancke | 80 | | |
| Deposition of Donna Jones | 81 | | |
| Deposition of Tom Mitros | 82 | | |
| Rebuttal Deposition of Hans Schweiger | 83 | | |
| Notice of Deposition of Donna Jones (Dep. Ex. 39) | 84 | | |
| Donna Jones Case Notes (Dep. Ex. 40) | 85 | | |
| Donna Jones Records Reviewed (Dep. Ex. 41) | 86 | | |
| Donna Jones Testimony List (Dep. Ex. 43) | 87 | | |
| Donna Jones Handwritten Notes (Dep. Ex. 44) | 88 | | |
| Donna Jones Fee Schedule (Dep. Ex. 45) | 89 | | |
| Donna Jones Annotated Policy (Dep. Ex. 46) | 90 | | |
| Donna Jones Annotated Depositions (Ex. 47) | 91 | | |
| Donna Jones Continued Annotated Depositions (Dep. Ex. 48) | 92 | | |
| Mitros Notice of Deposition (Dep. Ex. 49) | 93 | | |
| Mitros Handwritten Notes (Dep. Ex. 50) | 94 | | |

| | | | |
|---|---|---|---|
| Mitros Report with Annotated Records (Dep. Ex. 51) | 95 | | |
| Mitros Annotated Records (Dep. Ex. 52) | 96 | | |
| Materials Necessary for Rebuttal | 97 | | |
| Pottstown Memorial BATES 000001–17 | 98 | | |
| Veterans Affairs Medical Center (Atlanta) Medical Records (2022-02-25 – Anderson, Jesse – Dfdt's Doc Prod – 000030–002520) | 99 | | |
| Veterans Affairs Medical Center (Atlanta) Supplemental Medical Records (2023-06-02 – Anderson, Jesse – Dfdt's Doc Prod – 002543–2789) | 100 | | |
| Defendant's Privilege Logs | 101 | | |
| Defendant's Initial Disclosures | 102 | | |
| Defendant's Supplemental Initial Disclosures | 103 | | |
| Defendant's Second Supplemental Initial Disclosures | 104 | | |
| Defendant's Third Supplemental Initial Disclosures | 105 | | |
| Defendant's Fourth Supplemental Initial Disclosures | 106 | | |
| PACER File | 107 | | |
| Defendant's Responses to Plaintiffs' First Requests for Admission | 108 | | |
| Defendant's Responses to Plaintiffs' First Interrogatories | 109 | | |
| Defendant's Responses to Plaintiffs' First Requests for Production of Documents | 110 | | |
| Defendant's Provider Statements produced 9/29/23 (BATES 2543–2558) | 111 | | |
| Risk Management Memorandum Produced at 12/14/23 Hearing | 112 | | |

| | | | |
|---|---|---|---|
| VA Reviews Diagram Produced at 12/14/23 Hearing | 113 | | |
| AIB Summary Diagram | 114 | | |
| 12/23/16 AIB Memorandum ("Dobhoff Charter") | 115 | | |
| 3/9/17 AIB Memoranda and Recommendations | 116 | | |
| 2/9/17 AIB Memorandum and Report | 117 | | |
| Brewster AIB Statement | 118 | | |
| Jenkins AIB Statement | 119 | | |
| Brown AIB Statement | 120 | | |
| Person AIB Statement | 121 | | |
| Watson AIB Statement | 122 | | |
| Non-Protected/Management Review | 123 | | |
| USAO Expert 000375–79 | 124 | | |
| USAO Expert 000893 | 125 | | |
| USAO Expert 000883–84 | 126 | | |
| USAO Expert 000161–69 | 127 | | |
| USAO Expert 000172–78 | 128 | | |
| USAO Expert 000243 | 129 | | |
| USAO Expert 000727–35 | 130 | | |
| USAO Expert 000736 | 131 | | |
| USAO Expert 000185 | 132 | | |
| USAO Expert 000156 | 133 | | |
| USAO Expert 000283 | 134 | | |

| | | | |
|---|---|---|---|
| USAO Expert 000359 | 135 | | |
| USAO Expert 785 | 136 | | |
| Demonstrative Exhibits | 137 | | |
| Reid Declaration | 138 | | |
| Williams Declarations | 139 | | |
| McKethan Declaration | 140 | | |
| List of Georgia Verdicts and Settlements | 141 | | |
| Photographs of Decedent | 142 | | |
| Decedent's Army Records | 143 | | |
| Clinical Nursing Skills & Techniques (2014) | | | |
| AACN: Feeding Tube Placement (2016) | | | |
| ACLS Protocols | | | |
| Any Exhibit Listed by Defendant | | | |
| Any Item Used for Impeachment or Rebuttal | | | |

## Attachment "G-2"

Attached hereto as Attachment "G-2" for the Defendant are the typed lists of all documentary and physical evidence that will be tendered at trial.

| Exhibit No. | Description | Objection | Admitted |
|---|---|---|---|
| 1 | Complaint (ECF No. 1) | | |
| 2 | Answer (ECF No. 8) | | |
| 3 | First Amended Complaint (ECF No. 147) | | |
| 4 | Forms SF-95 submitted by Webb Anderson and Donna Anderson (ECF No. 93-1) | | |
| 5 | Medical records (comp.) Bates 000001 - 003921 | | |
| 6 | Medical Records Bates 000143-160 (Vitals) | | |
| 7 | Medical Records Bates 000381-383 (Autopsy Record) | | |
| 8 | Medical Records Bates 000386-389 (Discharge Summary Right CEA) | | |
| 9 | Medical Records Bates 000389-393 (Discharge Summary Left CEA) | | |
| 10 | Medical Records Bates 000396-400 (Palliative Care Consult Request) | | |
| 11 | Medical Records Bates 000472-478 (Vascular Surgery Consult Request) | | |

| 12 | Medical Records Bates 000479 (CPAP Consult Request) | | |
|---|---|---|---|
| 13 | Medical Records Bates 000479-486 (Cardiology Consult Requests) | | |
| 14 | Medical Records Bates 000760-762 (ER Triage Note) | | |
| 15 | Medical Records Bates 000763-767 (Surgery & History Physical Note) | | |
| 16 | Medical Records Bates 000856-862 (Nursing Daily Shift Note) | | |
| 17 | Medical Records Bates 000862-866 (Nursing Daily Shift Note) | | |
| 18 | Medical Records Bates 000917-920 (Nursing Daily Shift Note) | | |
| 19 | Medical Records Bates 000939-946 (Nursing Daily Shift Note) | | |
| 20 | Medical Records Bates 000989-990 (P. Brown 11/16/16 Progress Note) | | |
| 21 | Medical Records Bates 001044-1049 (RT Procedure Note) | | |
| 22 | Medical Records Bates 001049-1051 (RRT Record) | | |
| 23 | Medical Records Bates 001116 (Vascular Surgery Inpatient Progress Note) | | |
| 24 | Medical Records Bates 001391-1392 (Adverse Event Note) | | |

| 25 | Medical Records Bates 001474-1475 (Intubation Note) | | |
|---|---|---|---|
| 26 | Medical Records Bates 002027-2030 (Vascular Surgery Inpatient Note) | | |
| 27 | Medical Records Bates 002954-55 (CPR Flow Sheet) | | |
| 28 | Affidavit of Dr. John (Hans) W. Schweiger, dated May 13, 2021 (ECF No. 93-3) | | |
| 29 | Expert Report of Dr. Schweiger, dated March 10, 2023 (ECF No. 57-2) | | |
| 30 | Supplemental Expert Report of Dr. Schweiger, dated May 29, 2023 (ECF No. 73) | | |
| 31 | Supplemental Expert Report of Dr. Schweiger, dated July 3, 2023 (ECF No. 84) | | |
| 32 | All materials relied on by Dr. Schweiger | | |
| 33 | May 30, 2023 Deposition transcript of Dr. Schweiger, including any exhibits. | | |
| 34 | August 3, 2023 Deposition transcript of Dr. Schweiger, including any exhibits. | | |
| 35 | Expert Report of Dr. Kim A. Klancke, Dated April 21, 2023, including all exhibits (ECF No. 62) | | |
| 36 | Articles/references relied on by Dr. Klancke: Fudim MD et al. One-year mortality after implantable cardioverter defibrillator placement within | | |

| | | | |
|---|---|---|---|
| | the Veterans Affairs Health System (2020). | | |
| 37 | Articles/references relied on by Dr. Klancke: Rassias MD et al. A prospective study of tracheopulmonary complications associated with the placement of narrow-bore enteral feeding tubes (1998). | | |
| 38 | Articles/references relied on by Dr. Klancke: Wang MD et al. Framing Study: Natural History of Asymptomatic Left Ventricular Systolic Dysfunction in the Community (2003). | | |
| 39 | Articles/references relied on by Dr. Klancke: Weintraub MD et al. Twenty-Year Survival After Coronary Artery Surgery (2003). | | |
| 40 | Deposition transcript of Donna Anderson, dated January 26, 2023, including all exhibits. | | |
| 41 | Deposition transcript of Webb Anderson, dated December 13, 2022, including any exhibits. | | |
| 42 | Deposition transcript of Pamela Brown, dated June 29, 2022, including all exhibits. | | |
| 43 | Deposition transcript of Janell McKethan, dated February 10, 2023, including all exhibits. | | |
| 44 | United States Life Tables | | |

| **45** | Social Security Life Expectancy Tables | | |
|---|---|---|---|

**<u>Plaintiffs' Objections to Defendant's Exhibits:</u>**

Plaintiffs object to Defendant's Exhibit 1 as the Complaint is no longer the operative proceeding; an Amended Complaint has been filed by leave of Court.

Defendant has revised its list of medical records on the morning this Pre-Trial Order is due.  Plaintiffs reserve the right to object to this revised listing of medical records where Plaintiffs have less than 8 hours to review the same.  To the extent such records include statements not sufficiently reliable as evidence or to the extent the medical records may be irrelevant or contain other objectionable items admissible and bearing on the issues at trial, including records that may contain privileged mental health records, Plaintiffs object.  Plaintiffs will endeavor to supplement with a more particularized list of objections when sufficient time is afforded to Plaintiffs to review the records.  Defendant should redact any mental health treatment records prior to offering those to the Court or revealing them to witnesses.

Plaintiffs object to Defendant's Exhibits 36-39 as hearsay to the extent such articles may be used affirmatively. The listed articles are affirmative references to outside literature. While references to medical treatises are permissible for the purposes of cross-examination as learned treatises (though not admissible as evidence), such affirmative references to literature are impermissible hearsay.

Plaintiffs object to Defendant's Exhibit 35, as improper bolstering evidence of prior consistent statements. These exhibits are reports prepared by Defendant's expert witnesses, and until such time as the inconsistency of any such statement is attacked, their prior reports or statements are inadmissible.

**Supplement to Exhibit G-1: Defendant's Objections to Plaintiff's Exhibits**

| For Court Use | Description | Exhibit | Def's Objection |
|---|---|---|---|
| | 2018-01-31 – Anderson, Jesse – ATL VA - 000068 | 1 | None. |
| | 2018-01-31 – Anderson, Jesse – ATL VA – 000381–83 | 2 | None. |
| | 2018-01-31 – Anderson, Jesse – ATL VA – 000386–88 | 3 | None. |
| | 2018-01-31 – Anderson, Jesse – ATL VA – 000862–63 | 4 | None. |
| | 2018-01-31 – Anderson, Jesse – ATL VA – 000905–06 | 5 | None. |
| | 2018-01-31 – Anderson, Jesse – ATL VA – 000916–17 | 6 | None. |
| | 2018-01-31 – Anderson, Jesse – ATL VA - 000943 | 7 | None. |
| | 2018-01-31 – Anderson, Jesse – ATL VA – 000989–90 | 8 | None. |
| | 2018-01-31 – Anderson, Jesse – ATL VA – 001049–51 | 9 | None. |
| | 2018-01-31 – Anderson, Jesse – ATL VA – 001069–71 | 10 | None. |
| | 2018-01-31 – Anderson, Jesse – ATL VA – 001082–83 | 11 | None. |
| | 2018-01-31 – Anderson, Jesse – ATL VA – 001391–92 | 12 | None. |
| | 2018-01-31 – Anderson, Jesse – ATL VA – 001474–75 | 13 | None. |
| | 2018-01-31 – Anderson, Jesse – ATL VA – 001522 | 14 | None. |
| | 2018-01-31 – Anderson, Jesse – ATL VA – 001872–73 | 15 | None. |
| | 2018-01-31 – Anderson, Jesse – ATL VA – 001966–71 | 16 | None. |

| | 2018-01-31 – Anderson, Jesse – ATL VA – 002013 | 17 | None. |
|---|---|---|---|
| | 2018-01-31 – Anderson, Jesse – ATL VA – 002164 | 18 | None. |
| | 2018-01-31 – Anderson, Jesse – ATL VA – 002954–55 | 19 | None. |
| | 2018-04-02 – Anderson, Jesse – ATL VA – 003887–3919 | 20 | None. |
| | 2018-04-06 – Anderson, Jesse – ATL VA – 003920–21 | 21 | None. |
| | 2022-02-25 – Anderson, Jesse – DFDT'S DOC PROD – 000001–000029 | 22 | None. |
| | 2022-02-25 – Anderson, Jesse – DFDT'S DOC PROD – 000030–002520 | 23 | None. |
| | Medical Records and Medical Bills of Jesse James Anderson from Atlanta VA | 24 | None. |
| | Photograph Series of Decedent Jesse James Anderson | 25 | Relevance; authenticity; lack of foundation. It is unclear to Defendant if these items have been previously provided to Defendant. *See* Fed. R. Civ. P. 37(c)(1). |
| | Schweiger Initial Report [Doc 57-2] | 26 | No objection provided these materials are used in cross-examination, re-direct, or for impeachment. |
| | Inhulsen Report [Doc 57-3] | 27 | Relevance to damages issue; If relevant, no objection provided these materials are used in cross- |

| | | | |
|---|---|---|---|
| | | | examination, re-direct, or for impeachment. |
| | Klancke Report [Doc 62] | 28 | No objection provided these materials are used in cross-examination, re-direct, or for impeachment. |
| | Jones Report [Doc 71] | 29 | Relevance to damages issue; Defendant does not anticipate calling Ms. Jones. |
| | Mitros Report [Doc 72] | 30 | Relevance to damages issue; Defendant does not anticipate calling Dr. Mitros. |
| | Schweiger Supplemental Report [Doc 73] | 31 | No objection provided these materials are used in cross-examination, re-direct, or for impeachment. |
| | Schweiger Rebuttal Report [Doc 84] | 32 | No objection provided these materials are used in cross-examination, re-direct, or for impeachment. |
| | Jones Rebuttal Report [Doc 91] | 33 | Relevance to damages issue; Defendant does not anticipate calling Ms. Jones. |
| | Birth Certificate for Decedent Jesse James Anderson | 34 | None, assuming this exhibit is his death certificate. If birth certificate: relevance. |

| | | | |
|---|---|---|---|
| | Last Will and Testament of Jesse James Anderson | 35 | None. |
| | Funeral and Cremation Bill | 36 | None. |
| | Notice of Klancke Deposition (Dep. Ex. 19) | 37 | None. |
| | Klancke Handwritten Notes (Dep. Ex. 20) | 38 | No objection provided these materials are used in cross-examination, re-direct, or for impeachment. |
| | Klancke Charge Sheets (Dep. Ex. 21) | 39 | No objection provided these materials are used in cross-examination, re-direct, or for impeachment. |
| | Klancke Deposition List (Dep. Ex. 22) | 40 | No objection provided these materials are used in cross-examination, re-direct, or for impeachment. |
| | Klancke Records (Dep. Ex. 23) | 41 | None. |
| | Klancke Record Marked (Dep. Ex. 24) | 42 | None. |
| | Rassias Paper (Klancke Dep. Ex. 25) | 43 | No objection provided these materials are used in cross-examination, re-direct, or for impeachment. |
| | Fudim Paper (Klancke Dep. Ex. 26) | 44 | No objection provided these materials are used in cross-examination, re-direct, or for impeachment. |
| | Wang Paper (Klancke Dep. Ex. 27) | 45 | No objection provided these materials are used in |

| | | | |
|---|---|---|---|
| | | | cross-examination, re-direct, or for impeachment. |
| | Weintraub Paper (Klancke Dep. Ex. 28) | 46 | No objection provided these materials are used in cross-examination, re-direct, or for impeachment. |
| | Klancke Records Reviewed (Dep. Ex. 29) | 47 | None. |
| | Klancke Records Reviewed (Dep. Ex. 30) | 48 | None. |
| | Timeline (Klancke Dep. Ex. 31) | 49 | No objection provided these materials are used in cross-examination, re-direct, or for impeachment. |
| | Medicine Record (Klancke Dep. Ex. 32) | 50 | None. |
| | Klancke Records Reviewed (Dep. Ex. 33–38) | 51 | None. |
| | Autopsy Report | 52 | None. |
| | Death Certificate | 53 | None. |
| | United States Life Tables | 54 | None. |
| | Social Security Life Expectancy Tables | 55 | None. |
| | Medical Literature Necessary for Rebuttal | 56 | No objection provided these materials are used in cross-examination, re-direct, or for impeachment. |
| | Veterans Affairs Medical Center (Atlanta) Protocols for Enteral Tube Feeding (2022-02-25 – Anderson, Jesse – Dfdt's Doc Prod – 000001–29) | 57 | Relevance; FRE 403 – Defendant has admitted liability, thus whatever probative value this evidence has is |

| | | | |
|---|---|---|---|
| | | | substantially outweighed by unfair prejudice, undue delay, wasting time, or needlessly presenting cumulative evidence. |
| | Jesse Anderson Miliary Records (Anderson, Jesse – Pltfs – 000007–22) | 58 | None. |
| | Provider Personnel Files (2022-07-01 – Anderson, Jesse – Dfdt's Doc Prod – 002521–35) | 59 | Relevance; FRE 403 – Defendant has admitted liability, thus whatever probative value this evidence has is substantially outweighed by unfair prejudice, undue delay, wasting time, or needlessly presenting cumulative evidence. |
| | Provider Redacted Personnel Files (2022-07-29 – Anderson, Jesse – Dfdt's Doc Prod – 002536–42) | 60 | Relevance; FRE 403 – Defendant has admitted liability, thus whatever probative value this evidence has is substantially outweighed by unfair prejudice, undue delay, wasting time, or needlessly presenting cumulative evidence. |
| | Defendant's Policies Regarding Rapid Response Team Standards and Response Times | 61 | Relevance; FRE 403 – Defendant has admitted liability, thus whatever probative value this evidence has is substantially outweighed |

| | | | |
|---|---|---|---|
| | | | by unfair prejudice, undue delay, wasting time, or needlessly presenting cumulative evidence. |
| | Defendant's Policies Regarding Code Team Standards and Response Times | 62 | Relevance; FRE 403 – Defendant has admitted liability, thus whatever probative value this evidence has is substantially outweighed by unfair prejudice, undue delay, wasting time, or needlessly presenting cumulative evidence. |
| | Defendant's Investigative Documents Regarding the Subject Incident | 63 | Relevance; FRE 403 – Defendant has admitted liability, thus whatever probative value this evidence has is substantially outweighed by unfair prejudice, undue delay, wasting time, or needlessly presenting cumulative evidence; FRE 407. |
| | Defendant's Documentation Regarding Discipline of the Providers Involved in the Subject Incident | 64 | Relevance; FRE 403 – Defendant has admitted liability, thus whatever probative value this evidence has is substantially outweighed by unfair prejudice, undue delay, wasting time, or needlessly presenting |

| | | | |
|---|---|---|---|
| | | | cumulative evidence; FRE 407. |
| | Defendants' Data Regarding Code Team and Rapid Response Team Response Times | 65 | Relevance; FRE 403 – Defendant has admitted liability, thus whatever probative value this evidence has is substantially outweighed by unfair prejudice, undue delay, wasting time, or needlessly presenting cumulative evidence. |
| | Deposition of Sunja Watson | 66 | To the extent this is used other than for impeachment or for a witness who is or becomes unavailable: hearsay. |
| | Deposition of Pamela Brown | 67 | None, subject to deposition designations. |
| | Deposition of Robin Thomas | 68 | To the extent this is used other than for impeachment or for a witness who is or becomes unavailable: hearsay. |
| | Deposition of Luke Brewster | 69 | Relevance; hearsay; FRE 403 – Defendant has admitted liability, thus whatever probative value this evidence has is substantially outweighed by unfair prejudice, undue delay, wasting time, or |

| | | | |
|---|---|---|---|
| | | | needlessly presenting cumulative evidence. |
| | Deposition of Richard Belcher | 70 | Relevance; hearsay; FRE 403 – Defendant has admitted liability, thus whatever probative value this evidence has is substantially outweighed by unfair prejudice, undue delay, wasting time, or needlessly presenting cumulative evidence. |
| | Deposition of Ryan Moore | 71 | To the extent this is used other than for impeachment or for a witness who is or becomes unavailable: hearsay. |
| | Deposition of Jamis Gouge | 72 | Relevance; hearsay; FRE 403 – Defendant has admitted liability, thus whatever probative value this evidence has is substantially outweighed by unfair prejudice, undue delay, wasting time, or needlessly presenting cumulative evidence. |
| | Deposition of Maybil Sibyon | 73 | To the extent this is used other than for impeachment or for a witness who is or becomes unavailable: hearsay. |

|  | Deposition of Webb Anderson | 74 | None. |
|---|---|---|---|
|  | Deposition of Emily Lagergren | 75 | To the extent this is used other than for impeachment or for a witness who is or becomes unavailable: hearsay. |
|  | Deposition of Jenelle McKethan | 76 | None, subject to deposition designations. |
|  | Deposition of Donna Anderson | 77 | None. |
|  | Deposition of Rachel Inhulsen | 78 | Relevance to damages issue; If relevant, no objection provided these materials are used in cross-examination, re-direct, or for impeachment. |
|  | Deposition of Hans Schweiger | 79 | To the extent this is used other than for impeachment: hearsay. |
|  | Deposition of Kim Klancke | 80 | To the extent this is used other than for impeachment: hearsay. |
|  | Deposition of Donna Jones | 81 | Relevance to damages issue; hearsay; Defendant does not anticipate calling Ms. Jones. |
|  | Deposition of Tom Mitros | 82 | Relevance to damages issue; hearsay; Defendant does not anticipate calling Dr. Mitros. |

| | Rebuttal Deposition of Hans Schweiger | 83 | To the extent this is used other than for impeachment; hearsay. |
|---|---|---|---|
| | Notice of Deposition of Donna Jones (Dep. Ex. 39) | 84 | Relevance to damages issue; hearsay; Defendant does not anticipate calling Ms. Jones. |
| | Donna Jones Case Notes (Dep. Ex. 40) | 85 | Relevance to damages issue; hearsay; Defendant does not anticipate calling Ms. Jones. |
| | Donna Jones Records Reviewed (Dep. Ex. 41) | 86 | Relevance to damages issue; hearsay; Defendant does not anticipate calling Ms. Jones. |
| | Donna Jones Testimony List (Dep. Ex. 43) | 87 | Relevance to damages issue; hearsay; Defendant does not anticipate calling Ms. Jones. |
| | Donna Jones Handwritten Notes (Dep. Ex. 44) | 88 | Relevance to damages issue; hearsay; Defendant does not anticipate calling Ms. Jones. |
| | Donna Jones Fee Schedule (Dep. Ex. 45) | 89 | Relevance to damages issue; hearsay; Defendant does not anticipate calling Ms. Jones. |
| | Donna Jones Annotated Policy (Dep. Ex. 46) | 90 | Relevance to damages issue; hearsay; Defendant does not anticipate calling Ms. Jones. |

| | | | |
|---|---|---|---|
| | Donna Jones Annotated Depositions (Ex. 47) | 91 | Relevance to damages issue; hearsay; Defendant does not anticipate calling Ms. Jones. |
| | Donna Jones Continued Annotated Depositions (Dep. Ex. 48) | 92 | Relevance to damages issue; hearsay; Defendant does not anticipate calling Ms. Jones. |
| | Mitros Notice of Deposition (Dep. Ex. 49) | 93 | Relevance to damages issue; hearsay; Defendant does not anticipate calling Dr. Mitros. |
| | Mitros Handwritten Notes (Dep. Ex. 50) | 94 | Relevance to damages issue; hearsay; Defendant does not anticipate calling Dr. Mitros. |
| | Mitros Report with Annotated Records (Dep. Ex. 51) | 95 | Relevance to damages issue; hearsay; Defendant does not anticipate calling Dr. Mitros. |
| | Mitros Annotated Records (Dep. Ex. 52) | 96 | Relevance to damages issue; hearsay; Defendant does not anticipate calling Dr. Mitros. |
| | Materials Necessary for Rebuttal | 97 | It is not clear what this exhibit is. To the extent this is used other than for impeachment: relevance; hearsay. |
| | Pottstown Memorial BATES 000001–17 | 98 | It is not clear what this exhibit is. To the extent this is used other than for |

| | | | |
|---|---|---|---|
| | | | impeachment: relevance; hearsay. |
| | Veterans Affairs Medical Center (Atlanta) Medical Records (2022-02-25 – Anderson, Jesse – Dfdt's Doc Prod – 000030–002520) | 99 | None. |
| | Veterans Affairs Medical Center (Atlanta) Supplemental Medical Records (2023-06-02 – Anderson, Jesse – Dfdt's Doc Prod – 002543–2789) | 100 | None. |
| | Defendant's Privilege Logs | 101 | Relevance to damages issue; hearsay. |
| | Defendant's Initial Disclosures | 102 | None. |
| | Defendant's Supplemental Initial Disclosures | 103 | None. |
| | Defendant's Second Supplemental Initial Disclosures | 104 | None. |
| | Defendant's Third Supplemental Initial Disclosures | 105 | None. |
| | Defendant's Fourth Supplemental Initial Disclosures | 106 | None. |
| | PACER File | 107 | None. |
| | Defendant's Responses to Plaintiffs' First Requests for Admission | 108 | Relevance; hearsay; FRE 403 – Defendant has admitted liability, thus whatever probative value this evidence has is substantially outweighed by unfair prejudice, undue |

| | | | |
|---|---|---|---|
| | | | delay, wasting time, or needlessly presenting cumulative evidence. |
| | Defendant's Responses to Plaintiffs' First Interrogatories | 109 | Relevance; hearsay; FRE 403 – Defendant has admitted liability, thus whatever probative value this evidence has is substantially outweighed by unfair prejudice, undue delay, wasting time, or needlessly presenting cumulative evidence. |
| | Defendant's Responses to Plaintiffs' First Requests for Production of Documents | 110 | Relevance; hearsay; FRE 403 – Defendant has admitted liability, thus whatever probative value this evidence has is substantially outweighed by unfair prejudice, undue delay, wasting time, or needlessly presenting cumulative evidence. |
| | Defendant's Provider Statements produced 9/29/23 (BATES 2543–2558) | 111 | None. |
| | Risk Management Memorandum Produced at 12/14/23 Hearing | 112 | Relevance; hearsay; FRE 403 – Defendant has admitted liability, thus whatever probative value this evidence has is substantially outweighed by unfair prejudice, undue delay, wasting time, or |

| | | | |
|---|---|---|---|
| | | | needlessly presenting cumulative evidence. |
| | VA Reviews Diagram Produced at 12/14/23 Hearing | 113 | Relevance; hearsay; FRE 403 – Defendant has admitted liability, thus whatever probative value this evidence has is substantially outweighed by unfair prejudice, undue delay, wasting time, or needlessly presenting cumulative evidence. |
| | AIB Summary Diagram | 114 | Relevance; hearsay; FRE 403 – Defendant has admitted liability, thus whatever probative value this evidence has is substantially outweighed by unfair prejudice, undue delay, wasting time, or needlessly presenting cumulative evidence. |
| | 12/23/16 AIB Memorandum ("Dobhoff Charter") | 115 | Relevance; hearsay; FRE 403 – Defendant has admitted liability, thus whatever probative value this evidence has is substantially outweighed by unfair prejudice, undue delay, wasting time, or needlessly presenting cumulative evidence. |

| | | | |
|---|---|---|---|
| | 3/9/17 AIB Memoranda and Recommendations | 116 | Relevance; hearsay; FRE 403– Defendant has admitted liability, thus whatever probative value this evidence has is substantially outweighed by unfair prejudice, undue delay, wasting time, or needlessly presenting cumulative evidence; FRE 407 as the AIB's recommendations are subsequent remedial measures and therefore inadmissible to prove negligence, culpable conduct, a need for a warning or instruction. |
| | 2/9/17 AIB Memorandum and Report | 117 | Relevance; hearsay; FRE 403 – Defendant has admitted liability, thus whatever probative value this evidence has is substantially outweighed by unfair prejudice, undue delay, wasting time, or needlessly presenting cumulative evidence; FRE 407 as the AIB's recommendations are subsequent remedial measures and therefore inadmissible to prove negligence, culpable |

| | | | |
|---|---|---|---|
| | | | conduct, a need for a warning or instruction. |
| | Brewster AIB Statement | 118 | Relevance; hearsay; FRE 403 – Defendant has admitted liability, thus whatever probative value this evidence has is substantially outweighed by unfair prejudice, undue delay, wasting time, or needlessly presenting cumulative evidence. |
| | Jenkins AIB Statement | 119 | To the extent this is used other than for impeachment or for a witness who is or becomes unavailable: hearsay. |
| | Brown AIB Statement | 120 | To the extent this is used other than for impeachment or for a witness who is or becomes unavailable: hearsay. |
| | Person AIB Statement | 121 | To the extent this is used other than for impeachment or for a witness who is or becomes unavailable: hearsay. |
| | Watson AIB Statement | 122 | To the extent this is used other than for impeachment or for a witness who is or becomes unavailable: hearsay. |

|  | Non-Protected/Management Review | 123 | Relevance; hearsay; FRE 403 – Defendant has admitted liability, thus whatever probative value this evidence has is substantially outweighed by unfair prejudice, undue delay, wasting time, or needlessly presenting cumulative evidence. |
|---|---|---|---|
|  | USAO Expert 000375–79 | 124 | To the extent this is used other than for impeachment: hearsay and relevance. |
|  | USAO Expert 000893 | 125 | To the extent this is used other than for impeachment: hearsay and relevance. |
|  | USAO Expert 000883–84 | 126 | To the extent this is used other than for impeachment; hearsay and relevance. |
|  | USAO Expert 000161–69 | 127 | None. |
|  | USAO Expert 000172–78 | 128 | None. |
|  | USAO Expert 000243 | 129 | To the extent this is used other than for impeachment; hearsay and relevance. |
|  | USAO Expert 000727–35 | 130 | To the extent this is used other than for impeachment: hearsay, relevance, and FRE 403. |

| | | | Defendant has admitted liability, thus whatever probative value this evidence has is substantially outweighed by unfair prejudice, undue delay, wasting time, or needlessly presenting cumulative evidence. |
| | USAO Expert 000736 | 131 | To the extent this is used other than for impeachment: hearsay and relevance. |
| | USAO Expert 000185 | 132 | To the extent this is used other than for impeachment: hearsay and relevance. |
| | USAO Expert 000156 | 133 | To the extent this is used other than for impeachment: hearsay and relevance. |
| | USAO Expert 000283 | 134 | To the extent this is used other than for impeachment: hearsay and relevance. |
| | USAO Expert 000359 | 135 | To the extent this is used other than for impeachment: hearsay and relevance. |
| | USAO Expert 785 | 136 | To the extent this is used other than for |

| | | | |
|---|---|---|---|
| | | | impeachment: hearsay and relevance. |
| | Demonstrative Exhibits | 137 | No objection that these be used provided these are not admitted into evidence. |
| | Reid Declaration | 138 | Relevance; hearsay; FRE 403 – Defendant has admitted liability, thus whatever probative value this evidence has is substantially outweighed by unfair prejudice, undue delay, wasting time, or needlessly presenting cumulative evidence. |
| | Williams Declarations | 139 | Relevance; hearsay; FRE 403 – Defendant has admitted liability, thus whatever probative value this evidence has is substantially outweighed by unfair prejudice, undue delay, wasting time, or needlessly presenting cumulative evidence. |
| | McKethan Declaration | 140 | To the extent this is document no. 125-8, no objection. If not, to the extent this is used other than for impeachment or for a witness who is or becomes unavailable: hearsay. |

| | List of Georgia Verdicts and Settlements | 141 | None. |
|---|---|---|---|
| | Photographs of Decedent | 142 | Relevance; authenticity; lack of foundation. It is unclear to Defendant if these items have been previously provided to Defendant. *See* Fed. R. Civ. P. 37(c)(1). |
| | Decedent's Army Records | 143 | None. |
| | Clinical Nursing Skills & Techniques (2014) | | Relevance; hearsay; FRE 403 – Defendant has admitted liability, thus whatever probative value this evidence has is substantially outweighed by unfair prejudice, undue delay, wasting time, or needlessly presenting cumulative evidence. |
| | AACN: Feeding Tube Placement (2016) | | Relevance; hearsay; FRE 403 – Defendant has admitted liability, thus whatever probative value this evidence has is substantially outweighed by unfair prejudice, undue delay, wasting time, or needlessly presenting cumulative evidence. |
| | ACLS Protocols | | Relevance; hearsay; FRE 403 – Defendant has admitted liability, thus |

| | | | whatever probative value this evidence has is substantially outweighed by unfair prejudice, undue delay, wasting time, or needlessly presenting cumulative evidence. |
| | Any Exhibit Listed by Defendant | | None. |
| | Any Item Used for Impeachment or Rebuttal | | |

## **<u>Attachment "H-1"</u>**

Plaintiffs do not anticipate a trial/bench brief at this time but reserve the right to file one as legal issues may arise during trial.

## **Attachment "H-2"**

Defendant does not intend to file any trial briefs at this time but wishes to reserve the ability to brief issues as may arise during the trial.

## Attachment "I-1"

If counsel desire for the case to be submitted to the jury in a manner other than upon a general verdict, the form of submission agreed to by all counsel shall be shown in Attachment "I" to this Pretrial Order.

**As this case will be tried before the Court, the parties will submit proposed findings of fact, conclusions of law, and proposed judgments.**